# THOMAS S. HOLT AND CLAYTON S. KAUFFMAN,
### Co-Partners, Trading under the Name of
### Holt Construction Co.,

*vs.*

# STATE ROADS COMMISSION, O. E. WELLER,
### Chairman; THE YORK BRIDGE CO., THE TITLE GUARANTY & SURETY CO., THE COUNTY COMMISSIONERS OF TALBOT COUNTY, AND THE COUNTY COMMISSIONERS OF CAROLINE COUNTY.

*Corporations: insolvency; administration of assets; trust fund for creditors. Subrogation. Contractors and sub-contractors: contractor's bond. State Roads law.*

When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors.          p. 73

The bond given, under Chapter 217 of the Acts of 1910 (the Roads Law), by the construction company to the County Commissioners, to guarantee the completion of a contract to furnish the materials and labor for a bridge, according to certain specification, etc., is not liable for the debt of the construction company to a sub-contractor employed by it for work, etc., done by the sub-contractor.          p. 74

In general, a sub-contractor, employed by the general contractor, without the consent of the principal or owner, must look to the contractor for payment, and has no claim against such principal or owner.                    pp. 74, 75

The doctrine of subrogation will not be applied when it would work an injury upon third parties by destroying their legal or equitable rights.                    p. 75

*Decided June 26th, 1914.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE, and CONSTABLE, JJ.

*Frank Gosnell* (with whom was *Hazleton A. Joyce, Jr.,* and *Marbury, Gosnell & Williams,* on the brief), for the appellants.

*Julian W. Ridgely* and *Aubrey Pearre, Jr.,* for the appellees.

*Barton, Wilmer & Stewart, Aubrey Pearre, Jr.,* and *Julian W. Ridgely,* filed a brief for Redmond C. Stewart, Receiver.

*Charles F. Harley* and *Harley & Wheltle,* filed a brief for the Title Guaranty & Surety Co.

BURKE, J., delivered the opinion of the Court.

Thomas S. Holt and Clayton S. Kauffman, co-partners, trading under the name of the Holt Construction Company, filed their bill of complaint in Circuit Court No. 2 of Baltimore City against the appellees on this record.

The material facts which need be stated are these:   On or about the 15th of May, 1911, the York Bridge Company, a Pennsylvania corporation, entered into a contract with the County Commissioners of Caroline County and the County Commissioners of Talbot County for the furnishing of ·all material and labor for the construction and completion, according to plans and specifications on file in the office of each of said counties, a bridge known as Dover Bridge, and also a section of highway for a distance of about 0.83 miles upon and along the Dover Bridge road in Caroline County.

.Under the contract of the York Bridge Company with the County Commissioners of the two named counties, it was to be paid the following prices for the road construction: For borrow and fill, the price of fifty cents per cubic yard; for all class B oyster shell surfacing, seventy-five cents per square yard.  For rip rapping, one dollar and twenty-five cents per square yard.

The contract further provided that the contractor should give his personal attention to the·performance of the contract, and should keep the same under his control.   The *subletting of portions* of the work to be done under the contract might be done *only upon the written consent of the County Commissioners and approved by the Engineer,* and that the contractor should not, *either legally or equitably, assign any of the moneys payable under the contract, or his claim thereto, unless by and with the like consent of the County Commissioners in writing.*   No liability should attach to the County Commissioners, or to the counties, under the terms of the contract, until the Engineer had approved the work and certified in writing that the contractor had

completed the work according to the requirements of the contract.

It was further provided that the contractor should not be entitled to demand or receive payment for any portion of the work or material, except in the manner set forth in the contract and specifications, and until the Engineer had given his certificate to that effect, whereupon, said counties, by and through the County Commissioners, will, within thirty (30) days after such completion and delivery of said certificate, *pay, or cause to be paid, the said contractor,* in cash, the whole amount of money then due the said contractor, under the contract, excepting such sum or sums as may be lawfully retained under any of the provisions of the contract hereinbefore set forth.

The Title Guaranty and Surety Company, one of the appellees, became surety upon the bond of the York Bridge Company for the completion of the work according to the terms of the contract. This bond was given under the Act of 1910, Chapter 217, section 39 (p. 317) (Code of 1912, Article 91, section 72). The condition of the bond was that if the principal, the York Bridge Company, shall in all respects comply with the terms and conditions of said contract, and his obligations thereunder, including the specifications therein referred to and made part thereof, and such alterations as may be made in said specifications as therein provided for, and shall indemnify and save harmless the said County Commissioners of Caroline and Talbot Counties, and the said State of Maryland against or from all costs, expense, damages, injury or loss to which the said County Commissioners of Caroline and Talbot Counties and the said State of Maryland may be subjected, by reason of any wrongdoing, misconduct, want of care or skill, negligence or default, upon the part of said principal, his agents or employes in or about the execution or performance of said contract, including said specifications, and such alterations as may be made in said specifications as therein provided for, and

shall save and keep harmless the said County Commissioners of Caroline and Talbot Counties and the said State of Maryland against and from all losses to them or either of them, from any cause whatever, including patent infringements, in the matter of constructing said section of State-aided highway, then this obligation to be void, and otherwise to be and remain in full force and virtue in law.

About a year after the contract had been awarded to the York Bridge Company, it entered into a contract with the plaintiffs for the construction of the section of highway mentioned along the Dover road. The portions of that contract material to this case are:

"Whereas, on the 15th day of May, A. D. 1911, the York Bridge Company entered into a contract in writing with the County Commissioners of Caroline and Talbot Counties, Maryland, for the furnishing of all materials, etc., and to construct and complete, as per plans and specifications on file in the offices of the County Commissioners of Caroline and Talbot Counties, bridge known as Dover Bridge and section of State Highway for a distance of about 0.83 miles upon and along Dover Bridge Road, in Caroline and Talbot Counties, Maryland, which contract is known in the business of the York Bridge Company as contract Number Eleven Hundred and Ninety-four (1194).

"Now, therefore, for and in consideration of the sum hereinafter named, the Construction Company agrees to furnish all labor, tools, appliances and every other thing necessary and pertinent to the construction of the said section of State Highway upon and along Dover road.

"It is understood and agreed that the Construction Company is to assume all the obligations and to do everything necessary to the construction and completion of said road as called for by the plans and specifications which are on file in the offices of the County Commissioners of Caroline and Talbot Counties, and to be governed by the said plans and specifications the

same as the York Bridge Company itself has agreed to be governed.

"For and in consideration of the work to be performed, the Bridge Company agrees to pay the Construction Company, upon approval and acceptance of said road by the County Commissioners, as follows:

"For borrow and fill, the price of Fifty Cents ($.50) per cubic yard.

"For all Class B Oyster Shell Surfacing, Eighty Cents ($.80) per square yard.

"For Rip Rapping, the price of One Dollar and Twenty-five Cents ($1.25) per square yard.

It will be noted that the only change in the prices for the work was that the plaintiffs were to receive eighty cents for oyster shell surfacing instead of seventy-five cents as provided in the contract of the Bridge Company with the County Commissioners.

The bill alleged that the plaintiffs "completed their said work under said contract with the York Bridge Company, a body corporate, and there is *now due and owing your orators under said contract* the sum of four thousand, five hundred dollars ($4,500) or more," and that said sum is due the plaintiffs "for labor and materials furnished by them to said contractor, The York Bridge Company"; that the State Roads Commission and the County Commissioners have in hand and ready for payment on said contract the sum of approximately five thousand dollars.

It is further alleged that the plaintiffs are the only persons, so far as they know, to whom the York Bridge Company is indebted for labor and materials; that the said bridge company is a non-resident of this State, and is insolvent and unable to pay its debts, and that a receiver had been appointed for said corporation in the State of Pennsylvania by a court of competent jurisdiction. It is then alleged that the Title Guaranty and Trust Company is liable for the indebtedness of the York Bridge Company to the plaintiffs,

and that it should pay the same and be subrogated to the rights of the plaintiffs and should collect the amount thereof from the State Road Commission and the County Commissioners of Caroline and Talbot Counties.

The relief prayed for was:

"(1) That a receiver may be appointed to take charge of the said fund now in the hands of the said State Roads Commission and the said O. E. Weller, as chairman thereof, and the said County Commissioners of Talbot County and the said County Commissioners of Caroline County, and such other property as the said York Bridge Company may have in the State of Maryland; and to preserve or dispose of the same under the direction of this Court.

"(2) That the said State Roads Commission and the said O. E. Weller, as chairman thereof, and the said County Commissioners of Talbot County and the said County Commissioners of Caroline County, may be required to bring into this court, to be deposited to the credit of this cause, the aforesaid fund now due on said contract.

"(3) That the said York Bridge Company and its foreign receiver may by injunction be restrained and enjoined from collecting the said fund or any part thereof from the said State Roads Commission, the said O. E. Weller, as chairman thereof, the said County Commissioners of Talbot County and the said County Commissioners of Caroline County.

"(4) That the said State Roads Commission and O. E. Weller, as chairman thereof, the said County Commissioners of Talbot County and the said County Commissioners of Caroline County, may by injunction be restrained and enjoined from paying over the said sum of money or any part thereof, until the further orders of this Court.

"(5) That your Orators' claim to the said fund may be adjudicated by this Honorable Court in these proceedings.

"(6) That the said The Title Guaranty and Surety Company may be required to pay the claim of your Orators, and in turn be subrogated to the rights of the plaintiffs to the fund in question.

"(7) That your Orators may have such other and further relief as the nature of their case may require."

Redmond C. Stewart, the Receiver of the York Bridge Company, filed a petition in which he stated that by an order of Court passed in the case pending in Circuit Court No. 2 of Baltimore City, entitled *"York National Bank* v. *York Bridge Company,"* he had been authorized to take proceedings in this cause, looking to the establishment of his claims as receiver against the fund involved in this controversy, and prayed to be made a party defendant, and an order of Court was passed admitting him as a party defendant as prayed.

The State Roads Commission filed its answer to the bill in which it denied "that the Title Guaranty and Surety Company is entitled to collect the amount of the indebtedness of the York Bridge Company to the complainant from these defendants or that the complainant is entitled to an injunction restraining these defendants from paying over said balance of $5,516.66, or any part thereof, to the York Bridge Company, or its receiver, or that the complainant is entitled to have a receiver appointed for said sum of money or any part thereof."

The Title Guaranty and Surety Company and Redmond C. Stewart, the receiver of the York Bridge Company, filed demurrers to the bill. The Court sustained the demurrers and dismissed the bill, but ordered the costs of the proceedings to be paid by the receiver out of the fund in dispute. From this order the plaintiffs have appealed. "It is an established rule of equity that when a corporation becomes insolvent it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors (*Graham* v. *LaCrosse & M. R. R. Co.,* 102 U.

S. 148, 161). * * * Not simply of stockholders and cred-
itors residing in another State, but all stockholders and cred-
itors of whatever State they may be citizens. In *Wabash,.
St. L. & P. R. R. Co.* v. *Ham,* 114 U. S. 587, 594, it was
said that the property of a corporation was a trust fund for
the payment of its debts, in the sense of when the corpora-
tion was lawfully insolvent and all its business wound up,
or where it was insolvent, all its creditors were entitled in
equity to have their debts paid out of the corporate property
before any distribution thereof among the stockholders.  * * *
When the general debts and assets of a private corporation
lawfully doing business in a State or in course of administra-
tion by the Court of such State, creditors who are citizens of
other States are entitled, under the Constitution of the United
States, to stand on the same plane with creditors of like class
who are citizens of such State, and can not be denied the
equality of right simply because they do not reside in that
State, but all citizens residing in other States of the Union."
*Blake* v. *McClung et al.,* 172 U. S. 239.

The Title Guaranty and Surety Company is not liable for
the payment of the plaintiffs' claim for the reason that it
assumed no such liability under the terms of the bond. Al-
though such a liability was asserted by the bill, it was not
pressed in argument, or insisted upon in the brief, and it
must be conceded that under the terms of the bond, which
we have transcribed, that company is under no obligation to
pay the plaintiffs' claim.

It is said in 4 *Elliott on Contracts,* sec. 3633, that "the
contractor may assign different parts of the work to sub-con-
tractors and others, unless prohibited by the agreement, but
he is responsible for those he employs since a contract does
not exist between a sub-contractor employed by the general
contractor and the owner of the building, and the responsi-
bility of the owner is only to the general contractor. Thus
a provision in a contract for the construction of a railroad,
permitting the railroad company to apply any money due

or to become due under the contract to the payment of liens for labor and materials furnished the contractor, does not impose any obligation on the railroad company to pay liens, since the provision was wholly for the benefit of the railroad company."

What the York Bridge Company in fact did was to sublet a portion of the work covered by the contract to the plaintiffs, although by the express provision of the contract quoted above, it was prohibited from doing so, without the written order of the County Commissioners approved by the Engineer, and this order and approval does not appear to have been given. It was likewise prohibited from assigning any money payable under the contract. The plaintiffs must be treated as mere sub-contractors. They are simply creditors of the York Bridge Company, and not of the defendants, who are debtors to that company, and to whose receiver the fund is now payable. Under the facts of the case the doctrine of subrogation has no application. That doctrine is never applied: "When by so doing it will work an injury upon other persons by destroying their legal or equitable rights."

In *Milholland and Wilcox, Trustees,* v. *Tiffany,* 64 Md. 460, the Court says: "It may be applied on equitable principles in behalf of one who at the instance and request of the debtor pays a lien or incumbrance which he was under no legal obligation to pay, provided it does not interfere with the intervening rights and incumbrances. It will not, of course, be applied against superior or equal equities."

The plaintiffs have no more claim upon the funds than other persons who may have supplied labor and material on the erection of the Dover Bridge. To sustain the plaintiffs' claim under the circumstances would be to establish a precedent that might involve the public authorities in litigation and result in the expenditure of public money, and the consumption of public time in any case in which there was a dispute between the sub-contractor and the general con-

tractor.    Although the facts are not precisely similar, the principles announced in *Lombard Gov. Co.* v. *Mayor and City Council of Baltimore,* 121 Md. 303, should be applied to this case.    The plaintiffs occupy the same situation as other sub-contractor creditors of the insolvent company, and must share rateably with them in the distribution of the assets of the company.

The cases of *Ex Parte Golding, Davis & Co.,* 13 L. R. (1879-80) Ch. Div. 628, and *Kemp* v. *Falk,* 7 L. R. App. Cases, 573, cited by the appellants, dealt with the right of stoppage *in transitu,* and established the right of an unpaid vendor to the surplus proceeds of the sale of his own goods after the rights of the sub-purchaser had been performed.

In the first case cited there had been an absolute sale of the goods by the original purchaser, but the purchase money had not been paid.    "Can the vendor," said COTTON, L. J., "make effectual his right of stoppage *in transitu* without defeating in any way the interest of the sub-purchaser? In my opinion he can.    He can say, I claim the right to retain my vendor's lien.    I will not defeat the right of the sub-purchaser, but what I claim is to defeat the right of the purchaser from me, that is, to intercept the purchase money which he will get, so far as is necessary to pay me."

Nor do we find anything in the cases of *Bellamy* v. *Davey,* L. R. (1891), 3 Ch. 540, and *Hurley* v. *Atchison, Etc., Ry.,* 213 U. S. 126, in conflict with the conclusion we have reached.    Those cases presented a dissimilar state of facts and were governed by different principles.

The order appealed from will be affirmed.

> *Order affirmed, the costs in this suit to be paid by the receiver of the York Bridge Company out of the fund.*