# HARRY AHRENBERG *v.* MAX BROWN.

*Fraudulent Conveyance — By Husband to Wife — Subsequent Mortgagee—Notice of Fraud—Laches— Presumption on Appeal.*

In a suit by a judgment creditor, seeking to set aside a deed made by the debtor to himself and his wife, and asserting the priority of the judgment over a mortgage subsequently made by the husband and wife, it is to be assumed, in the absence of any allegation in the bill to the contrary, and for the purpose of an appeal by the mortgagee, that the latter, in good faith and without actual notice of any imperfection in the title of the husband and wife, loaned the sum which the mortgage, made a part of the bill, purported to secure.            p. 603

Under Code, art. 45, sec. 2, the fact that deeds conveying title from one to himself and wife through an intermediary were recorded did not charge one, to whom the husband and wife subsequently mortgaged the property, with notice that the deeds were made in fraud of an existing creditor of the husband.

                                   pp. 603-606

Equity and good conscience would not seem to permit one with full knowledge of facts constituting fraud, for which he could set aside a conveyance at any time, to remain inactive for the period of two years, and allow an innocent party to loan money on the faith of the record title, and then successfully assert his claim as superior to the mortgage made to secure the loan.                              p. 607

*Decided November 2nd, 1927.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

Bill by Max Brown against David Houseman, Lillian Houseman, his wife, and Harry Ahrenberg. From an order overruling his demurrer to the bill, defendant Ahrenberg appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*S. Carroll Epstein,* submitting on brief, for the appellant.

*J. Purdon Wright,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court of Baltimore City overruling the demurrer of the appellant to the bill of complaint filed in that court by the appellee.

The well pleaded allegations of the bill are assumed to be true for the purposes of the demurrer. The demurrer for that purpose admits the truth of the allegations contained in the bill, but denies the right of the complainant to require an answer to the allegations of the bill so far as this appellant is concerned. Having recourse, then, to the allegations of the bill, we find that David Houseman, on October 14th, 1924, was the owner of two pieces of leasehold property known as 5 South Central Avenue and 7 South Bethel Street, Baltimore; that on the said 14th day of October, 1924, Houseman, together with others, executed a joint confessed judgment note, payable on demand, in favor of Max Brown, the appellee, for $1,000, with interest from date, and containing a stipulation providing for a ten per cent. collection fee; that on the 27th day of October, 1924, Houseman conveyed the said two properties to Carl B. Saiontz in consideration of the sum of $5 and other good and valuable considerations; and on the same day Saiontz, for a like expressed consideration, conveyed the said property to Houseman and Lillian Houseman, his wife, as tenants by the entireties, both of these deeds being recorded on October 28th, 1924; that between the date of the $1,000 note and December 27th, 1924, Houseman paid to the appellee $125, representing the ten per cent. collection fee, amounting to $100, and $25 on account of the principal of said note; that on the 27th of December, 1924, judgment was entered by confession in the

Baltimore City Court on said note for the sum of $975, to bear interest from date of judgment, and court costs; that subsequent to the entry of the judgment Houseman made payments on the principal of the judgment sufficient to reduce it to $817.20, and also paid interest on the same to January 5, 1926; that the appellee demanded payment of Houseman, who failed to pay said balance due on the judgment, although requested to do so on divers occasions; that the deeds of October 27th, 1924, from Houseman to Saiontz, and from Saiontz to Houseman and wife, were made with intent to defraud, hinder, and prevent the appellee from collecting the balance due on the said judgment; that Houseman and wife, on the 20th day of September, 1926, also with intent to defraud, hinder, and further delay the appellee and other creditors, by their mortgage executed on said date, conveyed said property to Harry Ahrenberg, one of the defendants named in the bill of complaint, and the appellant here; that Houseman has not only conveyed his real estate to himself and wife as tenants by the entireties, through the intermediary of Saiontz, but has also disposed of and concealed his personal property, if any he had, so that the same could not be found by the sheriff of Baltimore City. The prayers of the bill with which this appeal is concerned are, that the deeds from Houseman to Saiontz and from Saiontz to Houseman and wife as tenants by the entireties be declared to be void and be vacated and annulled, and that the mortgage from Houseman and wife to the appellant may be declared subject to the prior rights of the appellee. To this bill the appellant, as stated, demurred, and the other defendants, Houseman and wife, filed a combined demurrer and answer. The chancellor by separate orders overruled both demurrers, and as to Houseman and wife, they having answered, further proceedings were ordered, while the appellant was given leave to file an answer within fifteen days of the date of the order overruling his demurrer. From the last mentioned order the appeal was taken to this court. The defendants Houseman and wife did not appeal, and we are not concerned with their rights or interest on this appeal,

except in so far as it might affect the interest of the present appellant. The single question, therefore, presented for determination, is, Should the mortgage of the appellant be subordinated to the lien of the judgment of the appellee in respect to the property now owned by Houseman and wife as tenants by the entireties?

Article 45, section 1, of the Code provides that "no acquisition of property passing to the wife from the husband after coverture shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors, who, however, must assert their claims within three years after the acquisition of the property by the wife, or be absolutely barred, and, for the purpose of asserting their rights under this section, claims of creditors of the husband not yet due and matured shall be considered as due and matured." Section 2 of the same article provides as follows: "Whenever any interest or estate of any kind in any property, real, personal or mixed, situate, lying or being within this state, has been or shall hereafter be sold, conveyed, assigned, mortgaged, leased, transferred or delivered by any husband, directly or indirectly to his wife, and has been or shall hereafter be subsequently sold, conveyed, assigned, mortgaged, leased, transferred or delivered by such wife and husband during their coverture, or by such wife after such coverture has terminated, or has been or shall hereafter be subsequently devised or bequeathed by such wife during such coverture or after such coverture has terminated, the fact of such previous sale, conveyance, assignment, mortgage, lease or delivery by such husband, directly or indirectly to his wife, shall not hereafter be deemed or taken at law or in equity, to have given, preserved or reserved, nor to give, preserve or reserve to any subsisting creditor of such husband, by reason of any debt or obligation, claim or demand whatsoever, any other or greater right, lien or cause of action against such interest or estate, or against any third person, his heirs, executors, administrators or assigns, than such creditors would have had in case such interest or estate had been sold, conveyed, assigned, mortgaged, leased, transferred

or delivered, or devised, or bequeathed by such husband directly or indirectly to such third person. And the fact of such previous sale, conveyance, assignment, mortgage, lease or delivery by such husband, directly or indirectly, to his wife, or the recital thereof, in any instrument of writing whatever, shall not hereafter he deemed or taken at law or in equity to give or impart, nor to have given or imparted notice to any third person, his heir, executors, administrators or assigns, of the existence or of the possibility or probability of the existence of any subsisting creditor or creditors of such husband."

The allegations of the bill nowhere charge the appellant with actual knowledge of or participation in the fraud charged against the Housemans, but on the contrary, the mortgage from the Housemans to the appellant, filed as an exhibit with and therefore taken as a part of the bill, shows that it was given to secure a loan of $4,800 made by the appellant to the Housemans, the receipt of which sum was duly acknowledged, and that the execution of the mortgage was a condition precedent to the advance or loan of the money.

According to the contention of the appellee, we are asked to say that a loan secured by a mortgage on property belonging to husband and wife as tenants by the entireties should be subordinated to a judgment, entered after the conveyance from the husband through an intermediary to himself and wife, for the reason that an examination of the land records at the time of execution of the mortgage would have disclosed that the property was conveyed in such manner to the wife, and is therefore void as against subsisting creditors of the husband. There can be little doubt that if the attack upon this conveyance from the husband to the wife had been made at a time precedent to the mortgage, the deeds transferring the property from the husband, and to the husband and wife as tenants by the entireties, should be vacated, provided the allegations of the bill were supported by proper proof, because the judgment creditor was a subsisting creditor of the husband at the time of such conveyances, he being

the holder of the husband's promissory note, even though
he had not at that time reduced the note to judgment. The
decision in such a situation would be controlled by section 1
of article 45, the attack upon such conveyances having been
made within three years, the time prescribed by that statute.
*Robbins v. Dorsey*, 150 Md. 265. However, the annulment
of these conveyances does not affect the validity of the title
of an innocent purchaser for value from the husband and
wife as tenants by the entireties, nor does it, in our opin-
ion, affect the validity of the lien of the mortgagee who, rely-
ing upon the record title of the property, in good faith and
without participation in the alleged fraud of the husband to
defeat his creditors, actually loans money on the property,
secured by mortgage. As stated, there is no allegation that
the mortgagee in this case had any actual knowledge of
the attempt of Houseman to defraud his creditors by the
conveyance to himself and wife, nor that the mortgagee did
not actually loan to the husband and wife the $4,800 men-
tioned in the mortgage; and there being no allegations in
the bill to the contrary, we must assume that the appellee
did loan to the husband and wife the $4,800 set forth as
being secured by this mortgage, in perfect good faith and
without notice of any imperfection in the title of husband and
wife to the property.

Being bound to assume the *bona fides* of this loan and
mortgage, and lack of actual notice on the part of the appel-
lant of any defect in the title, we come now to consider the
question of whether there was constructive notice to him by
the recording of the two deeds conveying the property from
Houseman to himself and wife. In the cases of *Green v.
Early,* 39 Md. 223, and *Milholland v. Tiffany,* 64 Md. 455,
it was held that where a husband makes a voluntary convey-
ance to his wife, the conveyance itself is sufficient to put
the purchaser upon inquiry, and if he fails to make such
inquiry, he is charged with the knowledge of such facts as
the inquiry would disclose. Both of these cases were decided
before the Act of 1892, now codified as section 2 of article
45, which, as above quoted, provides that "the fact of such

previous sale, conveyance, assignment, mortgage, lease or delivery by such husband, directly or indirectly, to his wife, or the recital thereof, in any instrument of writing whatever, shall not hereafter be deemed or taken at law or in equity to give or impart, nor to have given or imparted notice to any third person, his heir, executors, administrators or assigns, of the existence or of the possibility or probability of the existence of any subsisting creditor or creditors of such husband." It is clear, therefore, that the effect of this statute is to declare that what had previously been held by this Court as sufficient to put a purchaser on notice of an infirmity in the title of property conveyed by the husband either mediately or immediately to his wife, should, from and after the passage of the statute, not be sufficient to give such notice. In the case of *Nicholson v. Condon,* 71 Md. 620, also decided before the passage of the act above quoted, this Court, speaking through Judge Bryan, after pointing out that in the cases of *Green v. Early* and *Milholland v. Tiffany, supra,* the title to the property was standing in the name of the wife at the time the suit was brought to set aside the deed, went on to say: "But it has never been supposed that a *bona fide* purchaser without notice would not obtain a good title, although he may have purchased from a fraudulent grantee. When it is said that deeds in fraud of creditors are void, the doctrine must be understood with the limitations which are necessarily imposed by the well settled principles of law and equity. Judge Story in a few felicitous words thus states the result of all learning on this subject: 1 *Story's Eq.,* sec. 381: 'It is proper to be remarked that although voluntary and other conveyances in fraud of creditors are thus declared to be utterly void, yet they are so, only so far as the original parties and their privies and others claiming under them, who have notice of the fraud, are concerned. For *bona fide* purchasers for a valuable consideration, without notice of the fraudulent or voluntary grant, are of such high consideration that they will be protected, as well at law as in equity, in their purchases.' No possible reason can be suggested why a purchaser from a

married woman should stand on a footing different from that of a purchaser from any other grantee, whose title may be assailable for fraud of creditors." And further in the same opinion it is said: "When a deed, valid and without suspicion of infirmity on its face is regularly recorded, it conveys a valid legal title, and this title passes to a *bona fide* purchaser. This result is by force of the registration laws, and they apply to purchasers by and from married women, as well as to those by and from other persons. If, however, the purchaser has notice from any quarter of a fraud which would defeat the deed, he takes the title subject to the effect of this fraud, and it will be vitiated in his hands, in the same manner and to the same extent as in the hands of his grantor. This is a wise and salutary doctrine, and it is to be hoped that it will never be changed."

We therefore have the appellant holding a *bona fide* mortgage against Houseman and wife as tenants by the entireties, given to secure a *bona fide* loan to them of $4,800, with no actual notice of any imperfection in their title, and no constructive notice, other than the fact that the record shows that the property was conveyed from Houseman through an intermediary to himself and wife as tenants by the entireties; and further, we have the positive provision of the statute that the record of such a conveyance shall not hereafter be deemed or taken at law or in equity to give or impart notice to any third person of the existence or the possibility or probability of the existence of any subsisting creditor or creditors of such husband.

There is nothing in the recent case of *Figinski v. Modrak,* 151 Md. 140, in conflict with what we have said. The facts of that case were that the property in question was conveyed by Mrs. Modrak to Figinski, and by him conveyed to Mrs. Modrak for life, with remainder to her goddaughter and husband; and on the same day that these two conveyances were made, a mortgage was given to the Polish-American Building Association, for which association Figinski was the attorney. It was shown that Mrs. Modrak did not sign this mortgage, although it purported to be signed by her by

mark, and it was held that the building association had notice of the fraud, or of such facts as would put them upon inquiry, which inquiry would result in the ascertainment of the fraud practiced, and therefore the mortgage fell along with the fraudulent conveyance. In other words, it was there held that the proof showed that the mortgagee had either actual or constructive notice of the fraud. In that case the giving of the mortgage was simultaneous with the fraudulent transfer, and participated in by the same parties or their attorney; while in the present case the mortgage was not given until two years after the alleged fraudulent conveyance, and this lapse of time refutes the idea that the mortgage was part of a fraudulent scheme to defeat the creditors of Houseman, in view of the fact that for the whole two years action could have been taken to set aside the fraudulent conveyance on exactly the same grounds now alleged.

In addition to what has been said, it may be noted that the appellee was a subsisting creditor of the husband at the time of the conveyances from him to himself and wife, and that after said conveyances he received from the husband payments on the note and on the judgment after it had been obtained, these payments continuing for more than fourteen months after the alleged fraudulent conveyance and, while it may be argued that so long as payments were being made the appellee was not called upon to attack the conveyance, yet the record discloses that these payments ceased on January 5th, 1926, and the appellee took no action to set aside the conveyance until October 11th, 1926, after the appellant had in good faith loaned his money, secured by an admittedly *bona fide* mortgage. The appellee had as complete knowledge of the alleged fraud of the Housemans from the time of the recording of the deed in October, 1924, as he had in October, 1926, when the suit was instituted; and while the statute provides that the suit to set aside the conveyance must be begun within three years or the claim be absolutely barred, as against the property in question, we do not intend to be understood as construing the statute to

mean that there may not be a case where the creditor would be estopped from asserting his claim within the three year period. Equity and good conscience would not seem to permit one with full knowledge of the facts constituting fraud, for which he could set aside the conveyance at any time after its date, to remain inactive for the period of two years, and allow an innocent party to loan money upon the faith of the record title, and then successfully assert his claim as superior to the mortgage.

> *Order reversed, and case remanded, with costs to the appellant.*