Rébecca Woollen and William Rogers, Exc'rs of Zachariah Woollen and Mary Kurtz, *vs.* Solomon Hillen, Exc'r of Thomas Hillen.—*December* 1850.

There are many decisions both at law and in equity, which decide that receipts in deeds are only *prima facie* evidence of payment, and that parol evidence is admissible to contradict such receipts, but where fraud is out of the question, there is no decision which goes so far as to decide that parol evidence is admissible, to vary, contradict and render utterly void a solemn deed.

A release, of a mortgage recited that the mortgagor had fully paid and satisfied the debt to the mortgagees. On the same day the mortgagor executed a new mortgage to one of the same mortgagees. Held: That this release could not be explained by parol proof, and that by it the mortgagee lost his lien under the first mortgage, and the second mortgage must

be postponed to those prior to it in date, though junior to the first mort-gage.

It is well settled, that where there are two mortgagees under separate and distinct mortgages from the same mortgagor, and the prior mortgagee has a lien on two distinct funds, and the second on one of them only, equity will, for the protection of the subsequent incumbrancer, compel the prior incumbrancer to resort to that fund on which the second has no lien.

But this rule does not apply to a case where the prior mortgagee has a lien on two distinct estates of two separate and distinct mortgagors, and the subsequent mortgagee holds a lien on one only of these estates, encumber-ed by the prior mortgage.

APPEAL from the equity side of *Baltimore* county court.

This appeal was taken by the appellants from two orders of the court below, the one, of the 2d of March, 1849, directing the auditor of that court to state an account, allowing priority to a mortgage held by the testator of the appellee, in the dis-tribution of the funds arising from the sale of certain mortgag-ed real estate, sold under a decree obtained upon a bill filed by the executor of *Woollen,* one of the appellants; the other dated 29th of March, 1849, ratifying the account, stated in conformity with the preceding order.

The facts of the case are fully stated in the opinion of this court, and in the following opinion of the county court, de-livered by *Le Grand, J.*, accompanying the first of the above orders.

"'The facts of this case are as follows: on the 27th *July,* 1826, *Tschudy*, executed a mortgage to the defendants, *Thom-as Hillen* and one *Brice*, as therein stated, to secure the pay-ment of certain sums of money. This mortgage only covered a portion of the land belonging to *Tschudy,* in *Baltimore* coun-ty. On the 2*nd June*, 1827, he executed another mortgage to *Mary Kurtz*, to secure the payment of $1000. This mort-gage included not only the whole ninety acres lying in *Balti-more* county, but also, certain lots of ground belonging to the wife of *Tschudy,* lying within the limits of the city; on the 2*nd June,* 1827, a similar mortgage was executed to *House, Woollen & Co.*, on the same property. On the 20*th of Au-gust,* 1829, *Hillen & Brice* released their mortgage, which had

been executed, on the 27*th July*, 1826, and on the same day *Hillen* took another mortgage on the same property, to secure the payment of the sum of $3000, being the same sum which the mortgage of 1826 was designed to secure the payment of to him. In 1830 the mortgagees, *Kurtz*, and *Woollen*, and others, released the town lots embraced in their mortgages. The fund which is now in court for distribution, has been brought here as the proceeds of sale made under a decree, passed in this case, which originated in a bill filed by the executors of *Woollen*. Under this state of facts, the question is, which of the mortgagees are entitled, first to be paid out of the fund arising from the sale of that portion of the land lying in *Baltimore* county, covered by the mortgage to *Hillen?* To enable the court to understand the matter, the testimony of *Mr. McCulloh*, the gentleman who drafted the release from *Hillen* and *Brice*, and the mortgage to *Hillen* in 1829, has been taken, and read, subject to all legal exception. He states that the inducements and considerations for the execution of the release, and of the mortgage, were to free the lands, &c., therein described, from the lien given thereon, by the mortgage to *Hillen* and *Brice*, to the heirs of *Nicholas Carroll*, and to give to *Thomas Hillen*, as was done simultaneously by the execution of the mortgage of 1829, (expressly under the act of 1826, chapter 192,) power to enforce the punctual payment, semi-annually, of interest, &c., and that the principal sum of $3000, mentioned in the original mortgage, was not paid at the time of the execution of the release by *Hillen*. There have been several questions discussed by the counsel, which, in the view taken by the court, it is unnecessary to decide. It may not however be out of place to say, that none of those urged on behalf of *Hillen*, accord with the opinions of the court, except the one on which this case must be decided, and that is the the equity of *Hillen*, growing out of the original mortgage, which was released in 1829.

The first object of courts is to do justice, and this, when it can be accomplished in conformity with the rules which have been prescribed for their government, is an indispensable duty. Now what is the real state of this case? It is this: *Kurtz* and

*Woollen*, with full knowledge of the existence of the mortgage to *Hillen* and *Brice*, take the mortgages to them, embracing not only the land included in that mortgage, but also additional land in the county, and certain lots in *Baltimore* city, clearly shew they took subject to the prior legal estate of *Hillen*, and subordinate to the equities it created. Had there never been any release executed by *Hillen*, there could have been no doubt of his priority. The question then is, does that release change the aspect of the affair? I think not. The case in, 5 *Rawle*, 51, does not, in my judgment, touch the real question here involved. It was there decided, that as between creditor and debtor, it was competent for the holder of a judgment binding real estate, to discharge by covenant or release a portion of the estate from the lien, preserving it in force against the rest, and that this lien on the residue would not be destroyed, because of the release, if the holder of the judgment had not knowledge of a subsequent mortgage, and that he was not bound to know of the existence of subsequent incumbrances. This may be all true, and yet does not meet the facts in this case. The question here is, has the equity growing out of a prior incumbrance been discharged? To answer this question reference must be had, not to a portion only, but to all the facts. The mortgagees, *Kurtz* and *Woollen*, knew of the mortgage of 1826, and took subsequently, and of course subject to it. The release of that mortgage and the execution of the one bearing date in 1829, were simultaneous acts. They were placed on the records of the county at the same time, and were also executed at the same time. This being so they must be regarded as part of the same transaction. *Kurtz* and *Woollen*, could by the release acquire, in the absence of fraud or injury, no right, other than those which *Tschudy* acquired. There cannot be a question as between him and *Hillen*, that he took subject to all the equities growing out of the simultaneous execution of the release and new mortgage. In such a case no court of equity would allow of dower in such an estate as against the mortgagee. If this be so, and the decisions of our Court of Appeals, in my apprehension, go to this extent, how is

it that those mortgagees who advanced their money, with a full knowledge that there was a prior incumbrance, can be in any other position than that of *Tschudy* himself? They could get nothing except through him, and if he was not by these simultaneous transactions vested with the legal estate to the prejudice of *Hillen*, they cannot be, unless the acts of *Hillen* have been such as to work a fraud, or do them an injury. There is no pretence of fraud, and all the injury which has been, or can be to *Kurtz* and *Woollen*, grows out of their partial releases. It is said they were not bound to ascertain the existence of the second mortgage.

This might be so if this mortgage stood alone, and the case in 5 *Rawle* doubtless goes to this extent. But the facts of the case show it did not. There is no affirmative evidence that they had no knowledge of the second mortgage, or the inducements and considerations which moved to the execution of the release and mortgage. In the absence of any such proof, it is not unreasonable to suppose, that before the execution of the partial releases by *Kurtz* and *Woollen*, they had the records examined. There is certainly sufficient evidence to authorize such a finding by a jury, on issues submitting such a question, and if such examination took place, then there was such notice to them as will subject them to all the equities growing out of the simultaneous execution of the release by *Hillen*, and the execution of the mortgage to him. The acts of *Hillen*, at the time they were done, did no injury to the other incumbrancers, whilst their acts, if the views of their counsel be adopted, worked, practically, a total destruction of the lien of *Hillen*. No court of equity will deprive a man of his lien, in favor of another holding a lien of no higher dignity, unless compelled to do so by the circumstances of the particular case. In this case the mortgagees, *Kurtz* and *Woollen*, get what they contracted for. Any loss they may sustain is to be attributed entirely to their own acts. Had they retained the security which was given them when they advanced their money, they would now be fully protected. Equity requires they should suffer the consequences of their own indiscretion. This case being before

the court, by consent of counsel, with the view that all its equities may be ascertained, it is not necessary that the particular motions, &c., heretofore made, should be particularly noticed, because the direction of the court to the auditor will cover the whole ground. The same reason applies to the *exceptions* filed, The testimony of *McCulloh* is admitted, simply for the purpose of showing that no money passed at the execution of the release. For such a purpose our Court of Appeals have decided that parol evidence is admissible."

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK, J.

WILLIAM F. FRICK, and THOS. S. ALEXANDER, for the appellants contended,

1st. That *Hillen* is not entitled to priority of payment out of the fund in court, by virtue of his mortgage of 1826, because that has been released; nor by virtue of his mortgage of 1829, because that is posterior in date to those of the appellants.

2nd. That all the evidence in the cause offered by *Hillen* to contradict or explain the averment of payment, contained in his release of 1829, with a view to set up a still subsisting claim under his mortgage of 1826, and so to prejudice the claims and equities of the appellants, is entirely inadmissable.

3rd. That the release by *Hillen* to *Tschudy*, of the mortgage of 1826, even if the debt secured thereby be still unpaid, enured to the benefit of the appellants; and gave them the prior title, both legal and equitable, to the mortgaged property.

4th. That *Hillen* had no equity to be substituted, in any event, to the appellants' lien upon the city lots; inasmuch as said lots, when mortgaged to the appellants, were not the property of *Tschudy*, but of his wife; and *Hillen* had therefore no right to object to the release of said lots, by the appellants, or to claim any advantage from such release, under any circumstances.

5th. That if *Hillen* had an equity to be substituted to the

appellants' lien upon the city lots, by reason of their having two securities, and he but one, the appellants had still a valid right, under the circumstances of this case, to release those lots without any responsibility to *Hillen* for the act. That the recording of *Hillen's* mortgage of 1829, (which was posterior to those of the appellants,) did not operate as a constructive notice to them of its existence; that they had no actual notice of its existence, nor notice of any kind from *Hillen*, imposing on them an equity to retain those lots, for his ultimate security. And that he has therefore no right or equity to complain of the release of said lots by the appellants, or to claim any advantage or priority over them, by reason of the same.

6th. That *Hillen*, by the release of his prior mortgage in 1829, gave to *Tschudy* the means of rightfully demanding from the appellants a release of the city lots; because the appellants could not reasonably withhold such a release from *Tschudy*, when he made it lawfully appear to them, that the prior liens upon the county lands, (by reason of which they had originally demanded a mortgage of the city lots, as additional security for their claims,) had all been discharged. That the said releases were executed by the appellants, only because of the record admission by *Hillen*, and in the belief thereby induced, that his prior mortgage had been paid: and it is therefore contrary to equity, that *Hillen* should be permitted to deprive the appellants of their prior lien upon the county lands, when, by his own acts, he has caused them to release the other ample security which they held in the city lots.

T. P. Scott, contended for the appellee:

1st. That his lien being *in fact* the oldest, and the appellants having taken their liens with knowledge of, and subject to, his lien, he was entitled to payment, in preference over them, out of the proceeds of the sale of the mortgaged property.

2nd. That he did not lose his priority by the arrangement of the 20th *August*, 1829, because it is in proof by the documentary evidence, viz: the deed of 27*th July*, 1826, and the two deeds of 20*th August*, 1829, as well as by the testimony

of *McCulloh*, that the debt due to the appellee mentioned in the mortgage of 20*th August*, 1829, is the same debt mentioned in the mortgage of 27*th July*, 1826; and because the arrangement of 20*th August*, 1829, was neither designed or liable to prejudice or mislead the appellants.

3rd. That the deeds referred to in the second point, and the deposition of *McCulloh*, are admissible and competent evidence to prove the identity of the debt due the appellee, mentioned in the mortgage of 20*th August*, 1829, with the debt mentioned in the mortgage of the 27*th July*, 1826.

4th. That if the court should consider that the appellee lost his priority by the arrangement of the 20*th August*, 1829, yet he is still entitled to priority of payment out of the sales of the mill seat, over the appellants, because the appellants had two securities or sources of payment to look to, viz: the mill seat and the city lots, whereas the appellee could only look to the mill seat for payment of his claim.

5th. That the city lots embraced in the mortgage to *Woollen* and to *Kurtz*, were sufficient in value to have paid each of their claims; and that the deposition of *Brown* is admissible and competent to prove the fact, and that the appellants having voluntarily and without the assent of the appellee, given up their security on the city lots, cannot thereby be permitted to prejudice the equity of the appellee, as contended for in the fourth point.

Spence, J., delivered the opinion of this court.

The prominent facts in this case, and those upon which it must be decided, are as follows.

On the 27th day of July, 1826, *Tschudy* executed a mortgage to *Hillen* and *Brice* to secure the payment of certain sums of money. This mortgage to *Hillen* and *Brice*, included only a part of the land owned by *Tschudy* in *Baltimore* county. On the 2nd of June 1827, *Tschudy* and wife executed a mortgage to *Mary Kurtz*, to secure the payment of $1000. This mortgage included the ninety acres of land in *Baltimore* county, and certain lots of ground in *Baltimore* city, which

belonged to the wife of *Tschudy*. On the 17th day of June 1828, a similar mortgage was executed by *Tschudy*, on the same real estate to *House, Woollen, & Co.*

On the 20th day of August 1829, *Hillen* and *Brice*, by their deed, regularly executed and acknowledged, released their mortgage of the 27th July 1826, and on the same day the deed of release was executed by *Hillen* and *Brice* to *Tschudy*, *Tschudy* executed to *Hillen*, a mortgage of the same land which had been thus released to him by *Hillen* and *Brice*.

In the year 1830, the mortgagees *Kurtz* and *Woollen* and others, executed a deed of release of the city lots which had been included in their mortgages.

The land included in *Hillen's* mortgage lying in *Baltimore* county, has been sold under a decree passed in this case, on a bill filed by the executors of *Woollen*, and the question is, which of the mortgagees are entitled to priority, or to be first paid out of the fund?

This question necessarily brings up for consideration and decision, the effect and operation of the deed of release of the 20th day of August 1829 of the mortgage of the 27th July 1826, from *Hillen* and *Brice* to *Tschudy*. On the part of the appellants it is insisted, that this deed was an entire and absolute release on the part of *Hillen* and *Brice*, of their lien under the mortgage of 1826, and consequently deprived them of any priority. This conclusion is denied on the part of the appellees, and they insist that the deed of release of 1829, when taken in connection with the parol testimony of *McCulloh*, cannot in equity have the operation and effect to deprive *Hillen* of his priority upon the fund in question.

*McCulloh's* testimony out of the case, and there could be no question as to the operation and effect of *Hillen's* and *Brice's* deed of release.

It may be conceded, that there are many decisions in which courts both of law and equity have determined, that receipts in deeds are only *prima facie* evidence of payment, and that parol evidence is admissible to contradict such receipts, but we have never yet seen the decision, fraud out of the question,

25      v.9

which went so far as to decide that parol evidence was admissible, to vary, contradict and render utterly void a solemn deed.

On what other imaginable ground, can it be insisted in this case, that *Hillen* is the prior incumbrancer? If he had never secured any lien before the mortgage of 1829, it could not be said, that his lien was prior to *Kurtz'* mortgage of 1827, and if the release of 1829 released his lien of 1826, his lien arises under the mortgage of 1829, more than two years subsequent to *Kurtz'* deed of 1827.

But the appellee's solicitor insisted in the argument, that the deed of release and the mortgage of 1829, having been executed simultaneously, *Hillen* did not thereby lose his priority as incumbrancer, and cases of dower, in which courts have adjudged that in cases of instantaneous seizin, where the husband had or took no beneficial interest, the widow was not dowable, were referred to. We think such cases are clearly distinguishable from the one under consideration. In the former cases, there never was any such estate in the husband, upon which the widow's right of dower could attach; in this case there was a lien under the mortgage to *Kurtz* of 1827, subject to be defeated only by *Hillen's* prior mortgage of 1826, and if the lien of *Hillen's* mortgage of 1826, was released by his deed of 1829, we can see no ground upon which *Kurtz'* priority can be defeated.

It is insisted by the appellee's solicitor, that if the court should consider, that the appellee lost his priority, by the arrangement of the 20th August 1829, yet he is still entitled to priority of payment out of the sales of the mill seat over the appellants, "because the appellants had two securities or sources of payment to look to, viz: the mill seat and the city lots, whereas the appellee could only look to the mill seat for payment of his claim."

It must be borne in mind that the city lots were the property of *Tschudy's* wife, and that *Hillen* was not a creditor of *Mrs. Tschudy*, and had no claim upon them as a creditor. The doctrine seems to be well settled in courts of equity, that where there are two mortgagees under separate and distinct mortgages, and one and the same mortgagor and the prior mortgagee,

have a lien on two distinct funds or estates, and the second have a lien on one only of these funds or estates, that courts of equity will coerce the prior incumbrancer to resort to that fund, for the satisfaction of his lien, on which the subsequent mortgagee has no lien, and this for the protection of the subsequent incumbrancer.

This case now under consideration differs in an essential particular from the one supposed. In this case the prior mortgagee, *Kurtz*, had a lien on two separate and distinct estates, of two separate and distinct mortgagors, and the subsequent mortgagee, held in lien on one only of the estates incumbered by the prior mortgagee, and the estate released by the prior mortgagee, was the estate on which the subsequent mortgagee had no lien, it being the estate of *Tschudy's* wife. If the prior mortgagee, *Kurtz*, foreclose his mortgage on the estate of *Mrs. Tschudy* by sale, a court of equity considering her as a security of her husband, would substitute her to *Kurtz'* equities on the estate of her husband, and thereby exclude the subsequent mortgagee. *Vide* 2 *Story's Eq.*, sec. 1373.

The orders of the court in this case, of the 2nd March 1849, and the 29th of March 1849, are reversed with costs to the appellants, and the case remanded.

ORDERS REVERSED AND CASE REMANDED.