ADELE C. SEIDEWITZ

*vs.*

SUN LIFE INSURANCE COMPANY OF AMERICA.

AMALIE FIEGER

*vs.*

SUN LIFE INSURANCE COMPANY OF AMERICA.

*Contents of Documents—Oral Proof—Insurance—Payable to Mortgagee—Marshaling of Assets—Parties.*

Upon the hearing of exceptions to an auditor's account, an offer of proof made by one of the exceptants, proposing to prove by a witness to be produced the contents of a last will and testament, of mortgages of record, of insurance policies, and of other written or record matters, was properly refused, such matters not being susceptible of oral proof.　　　　　　　　　p. 512

If insurance is effected by the mortgagee of property at the mortgagor's expense, by reason of the latter's breach of his covenant to insure, the proceeds of the policy must be applied on the mortgage debt.　　　　　　　　　　　　　　p. 514

In order to apply the doctrine of marshaling assets in connection with two funds, one consisting of the proceeds of a mortgage sale of property, and the other of the possible proceeds of insurance policies on the property, in terms payable to the mortgagee, *held* that it was necessary to make additional parties, including the representatives of the mortgagor and the insurance companies, which were contesting their liability under the policies.　　　　　　　　　　　　　　　p. 516

*Decided January 17th, 1924.*

Appeals from the Circuit Court of Baltimore City (STEIN, J.).

Exceptions by Adele C. Seidewitz, an infant, by Adele Seidewitz, her mother and next friend, and by Amalie Fieger, to an auditor's report and account distributing the proceeds of a sale of property made under a mortgage in favor of the Sun Life Insurance Company of America. From an order dismissing the exceptions and ratifying the report and account, said exceptants separately appeal. Affirmed.

The causes were submitted on briefs to BOYD, C. J., BRIS-COE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Christopher R. Wattenscheidt* and *Blades, Rosenfeld & Frederick,* for the appellants.

*Jacob M. Moses,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

Edwin A. Seidewitz and wife executed a mortgage on the 21st day of March, 1918, on certain real estate then in Baltimore County (now in Baltimore City) to the Sun Life Insurance Company of America for $12,000, with interest thereon from date, the principal being payable three years after date, and the interest quarterly, as was evidenced by a promissory note for said principal amount, and twelve notes, each for $180, for the interest. A petition was filed by Amalie Fieger, alleging that she held a *second* mortgage for $2,500 on the same property, and an order of court was passed making her a party and ordering the auditor, in stating his account, to allow her such sums as may be available and found to be due to her by reason of that mortgage. The Sun Life Insurance Company of America afterwards filed a petition stating that, in addition to its mortgage un-

der which the sale hereinafter referred to was made, it was the holder of a *second* mortgage, dated May 1, 1920, from Adele Seidewitz, widow, and others, payable to it, for $2,000, with interest from November 1, 1921, which principal and interest were in default. That petitioner also filed a waiver of priority of mortgage from Amalie Fieger dated the 20th of April, 1920. An order of court was passed directing the proceeds of the sale remaining in the hands of the attorney, after the payment of the principal and interest due under the first mortgage, to be applied on account of the payment of its claim under the *second* mortgage. So in speaking of the *second* mortgage we will mean the second one of the Sun Life Insurance Company, and will refer to the one of Amalie Fieger as the third.

There was a sale made by Jacob M. Moses, the attorney named in the first mortgage, on the 16th of February, 1922, which was duly reported to the Circuit Court of Baltimore City. The property included in the mortgage was reported as sold to Christopher R. Wattenscheidt for the sum of $10,-000. Although the order of ratification of the sale does not appear in the record, it was ratified, and an auditor's report distributing the proceeds is in the record, leaving, after the distribution to commissions, costs, taxes, etc., the sum of $9,120.40, to be applied to the first mortgage. The claim filed in the case by the mortgagee of that mortgage was $12,-546.00, making balance due the mortgagee $3,425.60. The auditor also made a note on the audit that the papers show due on a second mortgage, Sun Life Insurance Company, including interest, $2,210, and due on the mortgage of Amalie Fieger, with interest not disclosed, $2,500. There is thus an apparent shortage from the sale of $10,190.50 on the three mortgages.

According to an "offer of proof" hereinafter referred to, Edwin A. Seidewitz died on August 24th, 1918, and devised all of his property to his wife for life, or until remarriage,

and after her death or remarriage, to his children in equal shares. The second mortgage was executed by Adele Seidewitz, widow, William E. Seidewitz and wife, Edwin W. Seidewitz, Albert R. Seidewitz and Laurie H. Riggs, trustee appointed by the court for Adele C. Seidewitz, an infant, to make the mortgage.

Adele C. Seidewitz, by her mother and next friend, filed a petition in this case, asking that she be made a party and be granted leave to except to the auditor's account. An order was passed making her a party plaintiff and granting leave to her to except to the auditor's account, which she did. Amalie Fieger, who had been made a party, also excepted to the auditor's account. The report and account of the auditor was finally ratified and confirmed, and the order concludes that "the exceptions be and the same are hereby dismissed, without prejudice to each exceptant, to pursue their respective remedies in a proper forum and in another proceeding."

The portion of that order which we have just quoted relates to a matter which we will now consider. The record is very unsatisfactory, and we had to assume some things which ought to have been made clear in the record, and not by reciting them in the briefs—particularly that of the appellee—which are not to be found in the record, to which, of course, we are confined. There is in the record what is called "offer of proof." It begins by stating that Amalie Fieger and Adele C. Seidewitz, by Adele Seidewitz, her mother and next friend, "upon the hearing of exceptions to the auditor's account heretofore separately filed by them in said case, offer to prove." They conclude the offer of proof by stating that:

> "It is contended that the Sun Life Insurance Company should be allowed only the difference between $14,756.00 (the amount of its claims) and $8,714.61, the adjusted amount of loss under said policies, this difference amounting to $6,041.39, and that the balance remaining out of $9,120.40 (the net proceeds of

sale) after the payment of said $6,041.39 to the Sun
Life Insurance Company, which balance amounts to
$3,079.01, be audited to the holder of the third mort-
gage, Mrs. Amalie Fieger, in satisfaction of her mort-
gage claim."

Upon that offer of proof, the following order of court was
passed:

"The papers in the consolidated cases contained
much of the matters hereinabove referred to, and given
proper consideration; the matters of oral testimony
could not affect the questions to be determined in the
ratification of the auditor's account, for which rea-
sons the tender is refused and the usual exception
allowed."

The order of ratification of the audit is dated the same
day as the above order, the 12th day of May, 1923, and fol-
lows it in the record. An order of appeal is filed by each of
the exceptants "from the order passed on the 12th day of
May, 1923, to the Court of Appeals of Maryland." We as-
sume that the order of appeal was intended to be from the
order of ratification, although both orders of the Court were
dated the 12th of May, 1923. What "the papers in the con-
solidated cases contained" we are not informed. There are
no consolidated cases in this record, and of course this
Court has no means of knowing what papers are referred to,
or what they contain. But regardless of that, the offer of
proof contains many things which could not be proved by oral
testimony, and it was properly rejected as a whole. Indeed,
upon what principle a witness could be permitted to testify
as to what a last will and testament, mortgages of record,
insurance policies, or other written or record matters, con-
tain, we are not informed. It would have been so easy to
obtain legal evidence of the two mortgages not in the record,
the insurance policies, the suits referred to, and any relevant
matter contained in them, that we do not understand why it

was not furnished, if supposed to be necessary or useful, or why a simpler and more inexpensive way could not have been adopted—for the attorneys to agree upon those things, which were admitted to be correct, and offer evidence in proper shape of those matters which could not be agreed upon. We suppose that it was intended to offer evidence of matters included in the proffer in some regular proceeding before the court, but we are not informed whether evidence was being taken in open court, or how the exceptions to the audit were being heard. While the judge of the lower court knew from the papers before him, possibly statements of attorneys, etc., some facts, he probably had much more information than the record gives us, although if deemed of importance, they should have been brought before us in the regular way, or by agreement, but, as the record stands, there is nothing to show, or even suggest any error on the part of the lower court. If we were permitted to go outside of the record we would see that the brief of the appellee is in hopeless conflict with some things contained in the offer of proof.

As the case stands, this court has no information which it can act on, as to whether the insurance was kept up, if so, to what amount, and whether the insurance companies have paid, or can be required to pay, the policies. The proffer shows that suits were brought against two insurance companies as late as December 12th, 1922, but there is nothing even in the proffer to indicate that any sum had been collected, or is likely to be received, or what provisions are in the policy or policies. Whether or not there was any insurance provided for or taken out when the second mortgage was given, we do not know, but what was agreed upon between the parties in the first mortgage, we have the best evidence of, as that is in the record. We find from it that Edwin A. Seidewitz covenanted—

> "to keep the improvements on the land insured against loss by fire in an insurance company or companies selected by, and in an amount designated by, the said

mortgagee, and to cause the policy or policies to be so framed or indorsed as in case of fire to inure to the benefit of the said mortgagee, its successors or assigns, to the extent of its or their lien or claim under this mortgage, and to deliver the policy or policies to the mortgagee to be kept by the mortgagee. And in the event of any loss by fire, the insurance company or companies are hereby directed by the mortgagors to make payment for such loss to the mortgagee only, and not to the mortgagors, and mortgagee jointly; such payment to the mortgagee shall be applied to the extinguishment of the principal, interest and expenses secured by this mortgage, whether then due or not, but shall not exceed the amount payable under this mortgage."

While we find decisions differing as to whether a mortgagee is entitled or required to apply the proceeds of insurance policies to the debt, the difference being largely due to the circumstances surrounding the respective cases, it seems to us that there is no room for doubt as to the meaning of the provision in the first mortgage just quoted.

In *Tiffany on Real Property* (2nd ed.), 2458, sec. 617, Mr. Tiffany, after stating the law if there is no provision in the mortgage requiring the mortgagor to insure the premises, says: "If, however, the mortgagee insures the property on account of the mortgagor, or by his request, or at his expense, because the latter fails to comply with his covenant to insure, the proceeds of the policy must be applied on the mortgage debt." In 19 *R. C. L.* 405, par. 184, the writer, after referring to where the mortgagee insures his separate interest at his own expense and for his own benefit, says: "However, a different rule obtains if the insurance has been effected at the request or by the authority of the mortgagor and at his expense, or under circumstances that would make him chargeable with the premium. In that case he is entitled to the benefit of the proceeds thereof, and to have them applied in

extinguishment of his debt, though this doctrine may be altered by provisions of the policy itself, providing for subrogation of the insurance company to the rights of the mortgagee and showing that only the interest of the mortgagee was designed to be insured." See also 14 *R. C. L.* 1406, par. 569.

Without referring to other cases cited by the appellants, in *Callahan* v. *Linthicum,* 43 Md. 97, CHIEF JUDGE BARTOL quoted at length from the well known case of *Carpenter* v. *P. W. Ins. Co.,* 16 Peters, 501, where the Supreme Court said: "If the premises are destroyed by fire before any payment or extinguishment of the mortgage, the underwriters are bound to pay the amount of the debt to the mortgagee, if it does not exceed the insurance. But, then, upon such payment, the underwriters are entitled to an assignment of the debt from the mortgagee, and may recover the same amount from the mortgagor, either at law or in equity, according to circumstances; for the payment of the insurance by the underwriters does not, in such case, discharge the mortgagor from the debt, but only changes the creditor."

The majority of the Court in *Callahan* v. *Linthicum, supra,* through CHIEF JUDGE BARTOL, said the nature of the insurance in that case was different from that in the Carpenter case, as it was held to be intended to cover as well the interest of the mortgagor as of the mortgagee, and this Court held that the mortgagee "would be treated in a court of equity as trustee for the mortgagor, and in the event of the payment of the mortgage debt by the latter, he would be entitled to maintain a suit in equity to recover the money received by the former, under the policy of insurance." The case of *Callahan* v. *Linthicum* was referred to with approval in *Skinner and Sons Co.* v. *Houghton,* 92 Md. 68, 89; *Heinz* v. *German Bldg. Assn.,* 95 Md. 160, 169.

The agreement between the mortgagor and mortgagee in this case is too clear to permit of doubt in event of payment of the proceeds of the policies to the mortgagee, but they have not yet been paid, as far as we are informed, and we do not even know their terms, or whether they will be paid in

whole or in part, or whether liability is denied. There must be some reason for delay as, according to the offer of proof, suits were still pending in December, 1922, although the fire occurred in December, 1921.

But conceding the law to be properly stated, as far as this case goes, the appellants do not reach the real question involved in it, even if we could deal with it as presented by the offer of proof. The insurance companies and some of the representatives of the original mortgagor and others are not parties to this proceeding. In the case of *Post* v. *Mackall,* 3 Bland, 477, 486, 492, marshalling of assets was considered, and while the principle is fully recognized the Chancellor was careful to say, on p. 502: "But in making this arrangement, great care must be taken not to lessen or impair, in any manner whatever, the obligation of the creditor's contract. It can only be made where all the parties are before the court, and the whole subject is within its jurisdiction; and where it is clear that the creditor can sustain no loss, nor be in any way delayed, or have his claim subjected to any additional peril," etc.

That case and *Watkins* v. *Worthington,* 2 Bland 532, were quoted from and referred to with approval in *General Ins. Co.* v. *U. S. Ins. Co.,* 10 Md., 517, 528. See also *Woollen* v. *Hillen,* 9 Gill, 185, note (c) on p. 186; *Morton* v. *Grafflin,* 68 Md. 545, 561; 26 *Cyc.* 927, 930; 18 *R. C. L.* 462.

We have no doubt about the correctness of the ruling of the lower court, and as that judge had an opportunity to obtain information which has not been given us in the record, he was better prepared to act than we are on this record, but inasmuch as it appears by the covenant in the mortgage what right the Sun Insurance Company has to the proceeds of the insurance policies in case it obtained them, we deemed it proper to say as much as we have, as it would be unjust and inequitable for that company to collect and retain the amount stated in the offer to be due from insurance companies in

addition to what it was allowed by the audit.  There are too many necessary parties absent to authorize us to definitely decide the questions which apparently the appellants desired us to decide.  As we understand the conclusion of the order of the court ratifying and confirming the auditor's report, the intention of that court was that the order should be passed without prejudice to the exceptants to pursue such other remedies as they may be advised they have in case the Sun Insurance Company of America receives the proceeds of the insurance policies.  Its rights, those of the appellant, and other creditors, if any, as well as of the fire insurance companies, can be protected in a proper proceeding.

> *Order affirmed in both cases, Nos. 70 and 71, the appellant in No. 70 and the appellant in No. 71 each to pay one-half of the costs, above and below.*