V. CALVIN TRICE, To Use Of AETNA INSURANCE
COMPANY et al. *v.* HENRY A. FLEMING et al.
[Nos. 15-17, October Term, 1934.]

*Decided November 2nd, 1934.*

The causes were argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Roszel C. Thomsen,* with whom were *Walter L. Clark, Clater W. Smith,* and *Harrington & Harrington,* on the brief, for the appellant.

*James A. McAllister, J. Gorman Hill,* and *LeRoy L. Wallace,* submitting on brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

Dean Knickerbocker, holding a first mortgage from Henry A. Fleming and wife in the amount of $4,200, on March 31st, 1931, default having occurred, assigned it to V. Calvin Trice for foreclosure. After executing this mortgage the Flemings conveyed the property to Nellie Kirkpatrick, from whom they took a second mortgage for $2,300. The foreclosure suit was instituted on April 1st, 1931. The policies of insurance on the buildings taken out by Mrs. Kirkpatrick, which contained the usual clause in favor of the first and second mortgagees, expired on March 31st, 1931. Mr. and Mrs. Kirkpatrick testified that renewals of these policies were sent them by mail by Mr. Phillips, the insurance agent in Cambridge; that he had not asked them for the premiums, and they had not been paid; that they expected to pay them by install-ments as they had previously done. Mr. Kirkpatrick tes-tified that he was informed by Phillips that Knicker-bocker had canceled them. Mr. Kirkpatrick further tes-tified that on inquiry of his agent, a Mr. McMann, he was informed that Mr. Knickerbocker had taken insur-ance to the amount of $5,200 or $5,500 in the Agency of J. Richard Smith; that he (Kirkpatrick) then went to

Phillips' office and took out additional insurance in the amount of $2,000, because they did not think $5,500 was enough; that he supposed the policies taken out by Knickerbocker were written in the same way as the old policies. He said he went to see Knickerbocker but he was not at home. The fire occurred on the 19th of April, after the Kirkpatricks had returned to their new home in West Virginia. Mrs. Kirkpatrick testified that about March 28th she had a conversation with Knickerbocker, Trice, and Richard Smith, with regard to the transfer of the insurance from the Agency of Phillips to that of Smith, at which there was no one present except Smith, Trice, Knickerbocker, and herself. She did not say what that conversation was. Mr. Trice in rebuttal testified that he, with Knickerbocker and Smith, went to see Mrs. Kirkpatrick on the occasion referred to, because the interest on the Knickerbocker mortgage was considerably overdue, taxes had not been paid, and the fire insurance was about to expire, and Knickerbocker wanted to talk with Mrs. Kirkpatrick about what she would be able to do in reference to the interest, taxes, and insurance; that Mrs. Kirkpatrick said she was not able to pay any taxes or interest or insurance; that she was expecting about $100 for some kind of government relief from her husband. "She and Mr. Knickerbocker had a lot of conversation about using some of that money to pay the interest, taxes and insurance." She said she had seven children to look after and her husband was not well, and she did not feel she would like to use that money for those things, and she could not pay any interest, taxes, or insurance. Mr. Kirkpatrick was not present at this conversation. He testified that he had not refused to pay the premiums. Mr. Knickerbocker died before the taking of testimony. Mr. Kirkpatrick testified that when he went to Mr. Phillips' office to pay an installment on the premiums on the two policies, "I learned the policies had been cancelled" by Mr. Knickerbocker. It was agreed that if he and Fleming were present they would testify that they had no knowledge of any change in the policies, from the

time of the sale of the property to the Kirkpatricks to the date of the fire: and that they had not been consulted with reference to any agreement of settlement of the policies as acted upon by Mr. Trice as assignee and Mr. Knickerbocker in these proceedings, but the testimony was objected to as irrelevant.

The fire occurred on April 19th, 1931. On March 31st, 1931, the day this mortgage was assigned to Trice for foreclosure, Knickerbocker applied to J. Richard Smith, an insurance agent, for insurance. On the same day Smith, as agent for the Continental and the Fireman's Fund Insurance Companies, issued two binders, in the amount of $3,200 each. The binders read as follows: "Cambridge, Maryland, March 31, 1931. Assured, Dean Knickerbocker, loss, if any, payable to V. Calvin Trice, assignee of mortgage for purpose of foreclosure" (here follows coverage). Amount $3,200. Terms, three months from March 31, 1931. Remarks: "It is understood and agreed that this property is deeded in the name of Mrs. Nellie Kirkpatrick, the first mortgage is held by Dean Knickerbocker and the second mortgage is held by Henry Fleming, we are insuring Dean Knickerbocker and V. Calvin Trice, Dean Knickerbocker having assigned his interest to V. Calvin Trice, assignee of mortgage for purpose of foreclosure." On April 16th, 1931, six policies were issued in the total amount of $6,400. In each of the policies Dean Knickerbocker is named as the assured, and loss, if any, made payable to V. Calvin Trice, assignee of mortgage for purpose of foreclosure, and in each the same language follows the word "Remarks" as in the binders. The agent testified that Knickerbocker applied for the insurance and the policies were delivered to him and he paid the premiums. They were not paid, however, until after the fire, and the agent testified he thought not until after the audit was made. But he said when the policies were issued he extended the credit to Knickerbocker.

The foreclosure suit was begun on April 1st, 1931, by the filing of a certified copy of the mortgage and sworn

456

statement by mortgagee of principal and interest due. Bond was filed on April 22nd, 1931. The mortgaged property was sold April 28th, 1931, and on May 21st, 1931, the assignee filed his report of sale, as assignee for the purpose of foreclosure, in which he recited the assignment to him of the mortgage after default, the institution of the foreclosure proceedings, the filing of bond, and the advertisement of the property for sale; that between the institution of the proceedings and the sale the dwelling house on said land was burned, "and the interest of the said Dean Knickerbocker and of the said V. Calvin Trice, Assignee of the said Mortgage for the purpose of foreclosure, being insured for $5,500, or an amount in excess of the said mortgage, principal and interest and costs, the said insurance to be collected by the said Assignee of Mortgage for the purpose of foreclosure and distributed in this case as though the insurance was part of the proceeds of sale"; that the property was sold at public sale to Mrs. Ida L. Wallace for $550. The sale was finally ratified on July 29th, 1931, on which date the trustee filed a special report and account of the insurance collected from the several companies, amounting in all to $3,700, the companies refusing to pay more, which the assignee accepted rather than suffer the delay incident to suits, "which said sum has been paid to him and Dean Knickerbocker, the mortgagee, which said sum is now brought into this court that the same may, together with the proceeds of the sale of $550.00, or in all the whole fund of $4,250.00, be distributed by the auditor of this court, which distribution and audit to be subject to the final ratification by this court. That the said mortgagee, Dean Knickerbocker, agreed to the said settlement of the said loss for $3,700.00, but not waiving or releasing his claim against the mortgagors, or their assignees, for the balance of the mortgage debt, interest, costs, expenses and taxes, which balance and difference is the amount remaining after deducting the fire insurance of $3,700.00, the receipts of sale of $550.00, or $4,250.00, from the total amount of the mortgage debt, interest,

cost, expenses and taxes, for which difference the assignee of mortgage for the purpose of foreclosure will, after the said audit and ratification, proceed to obtain a deficiency judgment." The mortgagee's assent is attached to the report, assenting "to the settlement and adjustment of the fire insurance made by the assignee of mortgage for the purpose of foreclosure, in this case, * * * I hereby reserving all my rights to obtain a deficiency judgment against the mortgagors, or their assignee or assignees, for the difference between the amount of the mortgage debt, interest, costs, expenses and taxes, and the sum of $4,250.00, which is the amount of $3,700.00 fire insurance and $550.00, proceeds of sale."

On August 1st, 1931, the auditor's report was filed, distributing the proceeds of sale and of the policies in accordance with the report of the assignee and the assent of the mortgagee. In the audit the assignee is allowed commission on the entire proceeds of the sale and of the policies. This audit showed a balance due the mortgagee of $656.67. On July 31st, 1931, the mortgagee and assignee filed an order to enter the case to the use of the six insurance companies. On August 26th, 1931, the assignee filed a petition alleging that the proceeds of the policies was improperly applied by the audit in reduction of the mortgage debt, and asking that an order be passed allowing petitioner to withdraw the audit, and directing the auditor to state an account distributing merely the $550 proceeds of sale and showing that the $3,700 proceeds of the policies is in the hands of petitioner subject to the future order of the court with reference to the final distribution thereof, on which petition an order was passed as prayed. And on September 4th, 1931, an audit was stated in accordance with said order, distributing the $550, and showing a balance due the mortgagee of $4,232.27 with interest from October 4th, 1931. Exceptions were filed to this audit by the Flemings and Mrs. Kirkpatrick, testimony was taken, and the case heard by the court. On January 29th, 1934, the court passed an order sustaining the exceptions and rejecting the audit,

and on January 31st, 1934, the court passed a decree directing the auditor to "forthwith state and file, subject to the usual exceptions, a new audit in these proceedings, such new audit to be identical with and similar in all respects to the audit filed in these proceedings on August 1st, 1931."

Much of the testimony in the record was objected to, and admitted subject to exception. But there was no motion to strike it out.

The appeal in No. 15 is from the decree of January 29th, 1934, and in No. 16 from the decree of January 31st, 1934, both filed by "Attorneys for Plaintiff." No. 17 is filed on behalf of the assignee from both decrees.

The appellant relies upon the case of *Frontier Mortgage Corporation v. Heft*, 146 Md. 1, 125 A. 772, as conclusive of the case in his favor; but we do not so regard it. The only thing decided in that case was that the insurer was entitled to be subrogated to the right of the mortgagee, on paying the amount of the loss to the mortgagee on a policy which was taken out by the mortgagee in the name of the mortgagors, loss if any payable to the mortgagee, where the policy contained a provision that, if the ownership of the insured was not unconditional and sole ownership, the policy should be void as to the insured but not as to the interest of the mortgagee. It also contained a provision that when the insurer shall pay the mortgagee any sum for loss under the policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, the company shall to the extent of such payment be thereupon legally subrogated to all the rights of the mortgagee. We held that it was not the "claim," but proof, that no liability to the mortgagor existed, that entitled the insurer to be subrogated, and that, as the insured had transferred the property at the time the policy was taken out, there was no liability to them under the terms of the policy, and therefore the insurer was entitled to be subrogated under the express terms of the policy.

There is no such question in the present case.

There can be no reasonable doubt, from the facts as above stated, that it was the intention of all parties that the insurance taken out by Knickerbocker should cover the interests of all parties under the foreclosure proceedings. It was so treated by the mortgagee and by the assignee for the purpose of foreclosure, as appears from the report of sale filed by the assignee on May 21st, 1931, and the special report filed by him on July 31st, 1931, after settlement was made with the insurance companies. There is not the slightest reference made in either of these reports to any claim made by the companies to any right of subrogation. This understanding also appears from the assent to the settlement, filed by the mortgagee with the said special report. Also from the original audit filed on August 1st, 1931, in which the proceeds of the policies are distributed with the proceeds of sale, commission on the entire sum allowed the assignee, insurance premiums on the policies in question and costs of preparing proof of loss and notary fees, and the deficiency shown by the audit is based on the allowance of the proceeds of the policies as a credit on the mortgage. The audit was based on the above reports filed by the assignee, and is in every respect in accord therewith. It was not until August 26th, 1931, that the assignee filed a petition asking to be permitted to withdraw the said audit, in which petition his representations were inconsistent with those contained in his original report of sale, and in the special report filed after the insurance was settled, and in the assent filed by the mortgagee. The court permitted the withdrawal of the audit and directed a new audit to be stated in accordance with the prayer of the petition, subject to the usual exceptions. The new audit, prepared in accordance with the assignee's revised views, simply distributed the proceeds of sale of the property, took no account of, and made no mention of, the proceeds of the policies, although the order directed the auditor to report these proceeds in the hands of the assignee. The auditor, however, in the new audit, charged the insurance premiums and the

costs of preparing the proofs of loss against the assignee, presumably at his instance. Bills for these items were filed with the auditor. In *Tiffany on Real Property* (2nd Ed.) p. 2458, sec. 617, it is said: "If, however, the mortgagee insures the property on account of the mortgagor, or by his request, or at his expense, because the latter fails to comply with his covenant to insure, the proceeds of the policy must be applied on the mortgage debt." See also, *Seidewitz v. Sun Life Ins. Co.*, 144 Md. 508, 514, 125 A. 78. In the present case there was a covenant to insure in the mortgage. The actions of the mortgagee and of the assignee at the time of taking out the insurance policies, and of the agent in writing them, are inconsistent with any other theory than that these policies were intended to take the place of the policies which the mortgagee ordered canceled. The mortgage debt was only $4,200, with a small amount of interest, whereas the amount of the new policies was $6,400. It must be presumed that the mortgagee would not have taken out policies, and the agent would not have written them, for more than enough to secure the mortgage debt, if that was all that was intended to be secured. The representations made by the assignee in his report of sale, and in his special report after the insurance was collected, accompanied by the assent of the mortgagee, are also inconsistent with any other theory. The sale was ratified on that theory, when the facts were fresh in everybody's mind.

We think the provision in the policies, "Loss if any payable to V. Calvin Trice, Assignee of Mortgage for purpose of foreclosure," was sufficient to protect all parties who were interested in the foreclosure proceedings, to all of whom the assignee of the mortgage stood in the relation of trustee as to the insured property (*Callahan v. Linthicum*, 43 Md. 97) ; and we have no doubt, under all the facts of this case, that the interests of all of them were intended to be protected. We do not mean to decide that the assignee was bound to insure the property. But we do hold that, when the policies were written as they were, the interest of the assignee in the policies

was that of all parties interested in the proceedings, according to their respective priorities, and the insurers were bound by their contracts. In any event, the right of subrogation would be only to the rights of the mortgagee, and he by his conduct is estopped to deny the rights of the other parties in interest to have the proceeds of the insurance policies credited on the first mortgage.

There was a motion to dismiss the appeal on the ground that the decrees appealed from were not final. But the decree of January 29th, 1934, was definitely final, and the decree of January 31st, 1934, practically determined the rights of the parties, and it would be futile to send this case back for another trial as a matter of form. The audit should be stated in accordance with the direction in the last decree. The motion to dismiss is therefore overruled.

*Both decrees affirmed, with costs to appellees.*