ARTHUR V. MILHOLLAND, and CHARLES E. WIL-
COX, Trustees, and others *vs.* LOUIS McLANE
TIFFANY.

*Deed from Husband to Wife—Constructive notice—Putting
on Inquiry—Recital—Mortgage—Affidavit as to Considera-
tion—Agent—Purchase money Mortgage—Subrogation.*

While the wife may under the Code acquire property directly from
the husband during coverture, provided it be not in fraud of the
rights of creditors, yet the voluntary conveyance to the wife is in
itself sufficient knowledge to put a purchaser upon the inquiry,
and if he fails or refuses to make the inquiry, he is chargeable with
the knowledge of such facts as the inquiry would necessarily have
disclosed.

When a deed from a husband to his wife is assailed on the ground
of being in fraud of the rights of his creditors, the declaration of
the husband on the face of the deed that he has property sufficient
to pay his debts, cannot be considered even as *prima facie* evidence
of the truth of the statement thus made.

A mortgage bore the certificate of a justice of the peace to the fact
that H., " agent of the within named mortgagee," appeared, &c.,
and " made oath in due form of law, that the consideration set
forth in the foregoing mortgage is true and *bona fide*," but he did
not certify that H. made oath *that he was* the agent of the mort-
gagee. HELD :

1st. That the mere declaration on the part of the justice of the peace
that H. appeared before him as the agent of the mortgagee, could
not be construed as meaning that H. made oath that he was the
agent.

2nd. That as the Code requires the agent to make this oath such a
certificate was not a substantial compliance with the statute, and
the mortgage was fatally defective.

H. in consideration of love and affection conveyed certain real estate
to his wife, it being at the time incumbered by a purchase money
mortgage. At the request of H. and his wife, T. advanced money
to pay the mortgage which was then due, and took from H. and

wife a mortgage on the same property as security. H. subsequently became insolvent, and upon a bill filed by the trustees of the insolvent, the conveyance to the wife was set aside as in fraud of his subsisting creditors. The property was afterwards sold by the order of the insolvent Court. In a contest as to whether T. was entitled to the proceeds of the sale as against the creditors of H., it was HELD:

That although the mortgage of T. was fatally defective as against the creditors of H., yet having at the request of H. and wife advanced the money to pay the purchase money mortgage, he was entitled as against said creditors to be substituted to the rights of the prior incumbrancer, there being no intervening rights or incumbrances.

APPEAL from the Court of Common Pleas, in Insolvency.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, IRVING, and BRYAN, J.

*James McColgan,* and *Michael A. Mullin,* for the appellants.

*Henry C. Kennard,* and *S. Teackle Wallis,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The facts in this case are simply these:—Hand, in consideration of love and affection, conveyed to his wife the property out of which this controversy has arisen. At the time of the execution of this voluntary conveyance, the property was mortgaged to Frederick J. Brown, trustee, to secure the payment of unpaid purchase money. The appellee, Tiffany, at the request of Hand, paid the purchase mortgage, the same being due, and took from Hand and wife a mortgage on the same property as security. Hand subsequently became insolvent, and upon a

bill filed by the insolvent's trustees, the conveyance to the wife was set aside as being in fraud of the rights of his subsisting creditors. The property was afterwards sold by the order of the insolvent Court, and the proceeds of sale are claimed on the one hand by the creditors of Hand; and on the other by the appellee as a *bona fide* purchaser, under his mortgage without notice that the deed to the wife was fraudulent. If the appellee is to be considered as a *bona fide* purchaser without notice, then there is an end to the question, for it is clear, that such a purchaser both under the Statute of Elizabeth and under our Code is protected. It is not contended that the appellee had in fact any actual knowledge as to the fraudulent character of the deed, but the argument is, while the wife may under the Code acquire property directly from the husband during coverture, provided it be not in fraud of the rights of creditors, yet the voluntary conveyance to the wife *is in itself* sufficient knowledge *to* put a purchaser upon the inquiry, and if he fails or refuses to make the inquiry, he is chargeable with the knowledge of such facts as the inquiry would necessarily have disclosed. And since the decision in *Green vs. Early and Townshend, Garnishees,* 39 *Md.,* 223, this is no longer an open question. In that case, it was expressly decided that the purchaser of property thus acquired by the wife under the Code, "was bound to know that the property was liable to the husband's debts, if there was no other sufficient property with which they could be paid ; and with this knowledge," say the Court, "he was put upon inquiry as to the existence and extent of the debts for which the property might be liable." We see no reason to qualify in any manner the decision thus made ; on the contrary, it is but a just and proper construction of the Code, having regard to the rights of creditors which the Legislature obviously intended to protect.

Conveyances founded upon the consideration of blood or marriage, are, we admit, sanctioned by the law, and it

has been held, that *such conveyances are not in themselves*
sufficient under the Statute of Elizabeth, to put a pur-
chaser upon the inquiry as to their good faith,—that he
has the right to rely upon the presumption that they were
honestly made in the absence of evidence to the contrary.
But there is this difference between the Statute of Eliza-
beth and our Code; the husband could not under the
English Statute nor by the common law convey his prop-
erty directly to his wife, while under our Code he may do
so, provided, however, says the Legislature, that such
conveyances are not in *fraud of the rights of subsisting
creditors.* He could, it is true, convey his property to a
trustee for the use and benefit of his wife under the Eng-
lish Statute, but the property in the hands of the trustee
was still liable for his debts. And such are the relations
between husband and wife, that in dealing with a *volun-
tary conveyance* made to the wife under the Code, Courts
ought to be watchful to see that they are not mere contri-
vances to put the property of the husband beyond the
reach of his creditors. And it does seem to us, that com-
mon justice to the creditors, requires, that such convey-
ances should in themselves be sufficient to put a purchaser
from the wife upon the inquiry. To hold otherwise, to
say, the wife may in the next moment sell the property,
and the purchaser is under no obligation to know, or even
make the inquiry whether the conveyance to her, be in
fraud of creditors, would be to put it in the power of a
bankrupt and dishonest husband to cheat and defraud his
creditors at will.

This construction may, we are aware, somewhat embar-
rass the alienation of property thus acquired by the wife,
but this inconvenience weighs but little when considered
in comparison with the evils which must necessarily result
from the construction contended for by the appellee. We
have said thus much, not that it is necessary in the view
we take of this case, but because it seems both from the

argument of the appellee and the opinion of the learned Judge below, that there has been a misunderstanding as to the decision in *Green vs. Early and Townshend.*

We shall not stop to consider whether the appellee did in fact make the inquiry such as the law requires, except to say in passing, that the declaration of Hand on the face of the deed, that he owed no debts, except such as were "amply provided for," is not such a declaration as the appellee had any right to rely on.    There are recitals in a deed, such as the consideration and other like matters, which for obvious reasons, are presumed to be true.    But when a deed from a husband to his wife, is assailed on the ground of being in fraud of the rights of his creditors, the declaration by the husband on the face of the deed, that he has property sufficient to pay his debts, cannot be considered even as *prima facie* evidence of the truth of the statement thus made.

But independent altogether of these views, the mortgage under which the appellee claims is in our opinion fatally defective.    No mortgage in this State is valid except as between the parties, unless the mortgagee makes oath that the consideration is true and *bona fide,* and if the oath is made by an agent, such agent must in addition to the above affidavit as to the consideration, make oath also that he *is the agent of the mortgagee*—the object being of course to prevent persons making oath as to the consideration, who were not in fact the agents of the mortgagees.    But be the object as it may, such are the plain and imperative requirements of the statute.    Now, in the mortgage before us, the justice of the peace certifies, that "W. Gilmor Hoffman, agent of the within named mortgagee" appeared, &c., "and made oath in due form of law, that the consideration set forth in the foregoing mortgage, is true and *bona fide,*" but he does not certify that Mr. Hoffman made oath *that he was the agent of the mortgagee.*    The *mere declaration* on the part of the jus-

tice of the peace that he appeared before him as *the agent of the appellee,* cannot be construed as meaning that W. Gilmor Hoffman made oath that he was the agent. And as the Code requires the agent to make this oath, such a certificate is not a substantial compliance with the statute. We have no right to disregard or fritter away this plain and explicit requirement of the statute. It is the law not only unto the parties, but also unto ourselves.

But although the appellee is not a *bona fide* purchaser without notice, we see no reason why he should not be substituted to the rights of the *purchase mortgage.* The law of substitution, is not founded on contract or agreement, but upon the equitable powers of the Court. It is in the nature of equitable relief, to protect a *meritorious creditor,* who has paid the debt of another, against loss and damage. We say *meritorious,* because it will not be applied in behalf of a mere stranger, who *officiously* meddles with a matter, which in no manner concerns him. In most cases, it is applied in behalf of one, who was under an obligation of some kind, to pay the debt of another, as a surety, who is obliged to pay the debt of his principal, or one who is obliged to pay a lien or incumbrance on property purchased by him. But it is not necessarily confined to these cases, but may be applied on equitable principles in behalf of one, who at the instance and request of the debtor, pays a lien or incumbrance which he was under no legal obligation to pay, provided it does not interfere with *intervening rights and incumbrances.* It will not, of course, be applied as against superior or equal equities. There being no intervening liens in this case, the question whether the appellee is entitled to be substituted to the rights of the purchase mortgage, depends upon whether he is to be considered as a *mere volunteer,* and if not a volunteer, whether he is upon equitable principles entitled to such substitution as against the subsisting creditors of Hand, the grantor. We say *subsisting*

creditors, because the deed to the wife, although fraudulent *as to them*, is valid as against his *subsequent* creditors, there being no evidence that it was made with a fraudulent purpose.

Now the appellee is not, we think, to be considered as a mere volunteer in the legal sense of that term. He was under no obligation, it is true, to pay the mortgage, but it was due, and Hand and wife were unable to pay it. In this condition of things they applied to the appellee, and at their request he advanced the money and paid it. He is not therefore a meddler, one who officiously intruded himself between the debtor and creditor. If this be so, then the question is, whether he is upon principles of justice and equity, entitled to stand in the shoes of the mortgagee as against the creditors of Hand, the mortgagor. And this, we think, is equally clear. The purchase mortgage which he paid was a prior lien on the property, and was under any circumstances entitled to *priority* of payment. What these appellants complained of, was that the voluntary conveyance to the wife, was in prejudice of their rights as creditors, and on this ground it was declared invalid. All they have a right now to ask, is that the property shall be subject to the payment of their claims in the same manner and to the same extent it was before the execution of the deed. In other words, that it shall not be diverted by means of fraud, from the payment of the grantor's debts. Now if the wife had paid the purchase mortgage in good faith as grantee under the voluntary conveyance, she would beyond question, have been entitled to be substituted to the rights of the mortgagee, for while a fraudulent grantee, with actual knowledge of the fraud will not be so entitled, because he is considered as a *particeps criminis*, yet it is well settled that a conveyance not tainted with *actual fraud*, but which is fraudulent by construction of law, will be allowed to stand as security for the money advanced by the grantee in good faith, to pay off incumbrances on the property.

Upon the same principle, one who in good faith pays off an incumbrance at the request of both the grantor and grantee, taking at the time a mortgage on the property as security, which, however, turns out to be defective, ought to be substituted to the rights of the incumbrancer, unless such substitution would operate to the prejudice of superior or equal equities. No injustice is done to the appellant creditors by substituting the appellee to the rights of the purchase mortgage. The property still remains subject to the payment of their debts in the same manner and to the same extent as if the voluntary conveyance had not been made, and the purchase mortgage had not been paid. On the other hand, unless he is so substituted the appellee must necessarily lose the money advanced and paid by him on account of the mortgage; and the payment thus made would enure to the benefit of Hand's subsisting creditors. It does seem to us, therefore, that he is upon the plainest principles of justice, entitled to the right of substitution.

There is no case in this State, we believe, precisely in point, but the conclusion we have reached is fully sustained not only by the text books, but also by well considered cases in other States. In *Sheldon on Subrogation,* sec. 8, the author says:

"Where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer whom he has thus satisfied, there being no intervening incumbrances." In support of the text, reference is made to quite a number of cases. In *Levy vs. Martin,* 48 *Wisconsin,* 199, the plaintiff at the request of the executors, advanced the money to pay a mortgage on the lands of the testator, and took as security a mortgage on the same lands made by the executors in pursuance of a license of the County Court, which was, however, invalid, and it was

held, that the plaintiff was entitled to the rights of the prior mortgagee. COLE, J., said, "the plaintiff loaned his money at the solicitation of the executors to take it up and relieve the estate. It is true, the plaintiff took from the executors at the time, the $800 mortgage in suit, relying upon the validity of the license of the probate Court of Racine County. But it is conceded that this license is defective and does not bind the heirs; consequently the security upon which the plaintiff relied has practically failed. Still his money has been applied to the discharge of just debts against the estate, and he has the prior right to be reimbursed out of the estate to the extent of the incumbrances which he has removed."

Upon the same principle in *Gilbert vs. Gilbert, et al.,* 39 *Iowa,* 657, where the plaintiff loaned money to discharge a prior incumbrance, and took as security a mortgage which turned out not to be binding as against the heirs, it was held, that the plaintiff was entitled to be subrogated to the rights of the prior incumbrancer.

And again in *Snelling vs. McIntyre,* 6 *Abbott's New Cases,* 469, where the husband and wife united in a mortgage to secure the payment of money advanced by the plaintiff to pay a prior mortgage upon the same premises, made by the husband before his marriage, and the wife afterwards, upon a bill to foreclose the mortgage, set up the plea of infancy, it was held, that the plaintiff, was entitled to be subrogated to the rights of the mortgagee under the first mortgage, even as against the dower rights of the wife.

In *Barnes, et al. vs. Mott,* 64 *N. Y.,* 397, ALLEN, J., said, "the doctrine of subrogation or substitution, at first applied in behalf of those who were bound by the original security with the principal debtor, has been greatly extended, and the principle, modified to meet the circumstances of cases as they have arisen, has been applied in favor of volunteers intervening subsequent to the original obligation,

and as between different classes of securities, and in marshalling of assets, and prescribing the order in which property and funds shall be subjected to the discharge of different classes of obligations, and as between different classes of creditors, so as to do substantial justice and equity in each case."

We may also refer to *Dixon on Subrogation,* 166; *Sheldon on Subrogation,* sec. 20; *Hazleton, et al. vs. Lesure,* 9 *Allen,* 24; *Payne vs. Hathaway,* 3 *Vermont,* 212; *Dillon vs. Byrne,* 5 *Cal.,* 455, and *Birrell vs. Schie, et al.,* 9 *Cal.,* 104.

We are not to be understood as adopting all that was said in these cases, and have referred to them to show how far the Courts in this country have gone in extending the right of substitution. We rest our decision on the ground, that after the voluntary conveyance from Hand to his wife, the appellee at their request, advanced the money to pay the purchase mortgage which was a prior lien on the property, taking at the time a mortgage on the same property as security, which turns out to be defective, and as there are *no intervening rights or incumbrances,* he is entitled as against the subsisting creditors of Hand to be substituted to the rights of the purchase money mortgage. And although the mortgage was released, and the debt may be considered at law as extinguished, yet it will not be so regarded in equity, if contrary to equity to so regard it. On the contrary, the debt may still be considered to exist for the benefit of the appellee who advanced the money to pay it, and the mortgage may still be considered in force so far as it may be necessary for his security.

We have not overlooked the cases of *Woollen's Ex'rs vs. Hillen's Ex'r,* 9 *Gill,* 185; *Alderson vs. Ames, et al.,* 6 *Md.,* 52; *Neidig vs. Whiteford,* 29 *Md.,* 178, and *Heuisler vs. Nickum,* 38 *Md.,* 270. In these cases, it was held, the right to substitution did not apply, because of the

rights and equities of intervening incumbrancers; or as in *Alderson vs. Ames, et al.*, and *Hcuisler vs. Nickum*, because the money advanced was applied to the payment of a vendor's lien,—a lien which could pass only by express assignment.

For these reasons, the order of the Court passed 24th April, 1885, ratifying account B, in which the appellee was allowed the sum of $3849.77 out of the proceeds of sale on account of the money advanced by him to pay the purchase mortgage, in preference to the claims of the subsisting and subsequent creditors of Hand, will be affirmed.

*Order affirmed.*

(Decided 27th January, 1886.)