72 A.3d 185

Jeremy K. FISHMAN, et al.

v.

Sheila MURPHY, Personal Representative of
the ESTATE OF Dorothy Mae URBAN.

No. 93, Sept. Term, 2012.

Court of Appeals of Maryland.

Aug. 15, 2013.

536

Mark W. Schweitzer (Brent M. Ahalt and Aaron D. Neal of McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., Greenbelt, MD), on brief, for petitioners.

No argument on behalf of the Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, BELL *, JJ.

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursu-

HARRELL, J.

On 3 January 2008, Sheila Murphy, in her capacity as the personal representative for the Estate of Dorothy Mae Urban, filed suit in the Circuit Court for Anne Arundel County against Robert Street, Urban's son. The Estate asked the court to declare null and void a 30 May 2007 deed executed by Urban to Street for an improved residential property at 229 Dale Street, Pasadena, Maryland ("Pasadena property"), because allegedly the execution and delivery of the deed was procured through fraud by Street. On 18 February 2008, Street executed a deed of trust, secured by the Pasadena property, for a loan made to him by 1st Chesapeake Home Mortgage, LLC ("1st Chesapeake"). The loan was in the amount of $91,350. From the proceeds of the loan, $59,086.72 that was applied by 1st Chesapeake to pay-off CitiFinancial for a mortgage on the Pasadena property placed by Urban on 6 December 2004. Street received the balance of the loan proceeds.

On 23 March 2010, the Circuit Court, in the Estate's suit, created a constructive trust as a means to carry-out its direction that the Pasadena property be conveyed in Street's name to the Estate. The court did so without declaring expressly the Urban–to–Street deed void *ab initio.* On 28 October 2010, Midfirst Bank, assignee from 1st Chesapeake of the Street note and deed of trust, granted substitute trustee power to Jeremy K. Fishman, Samuel D. Williamowsky, and Erica T. Davis Ruth, ("Petitioners").[1] Street defaulted under the deed of trust thereafter and Petitioners filed a foreclosure action in the Circuit Court. The Estate filed a Motion to Stay and Dismiss the foreclosure proceedings, which motion was denied by the Circuit Court.

---

ant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Assignment of the Deed of Trust to Midfirst Bank occurred before the Circuit Court created the constructive trust to convey the Pasadena property to the Estate.

The Estate appealed [2] to the Court of Special Appeals the Circuit Court's interlocutory order denying the Estate's Motion to Stay and Dismiss the foreclosure action. The intermediate appellate court reversed, in a reported opinion, the judgment of the Circuit Court and remanded the case to the Circuit Court with direction to grant the Estate's Motion to Dismiss. *Murphy v. Fishman,* 207 Md.App. 269, 298, 52 A.3d 130, 148 (2012). The appellate court concluded that Petitioners were unable to maintain a foreclosure action upon the Pasadena property because, under the doctrine of *lis pendens,* they had constructive notice of the pendency of the Estate's suit against Street before closing on the loan to Street and, thus, were not entitled to the protections of a subsequent *bona fide* purchaser of the Pasadena property. *Id.* at 298, 52 A.3d 148. In addition, the court held that the doctrine of equitable subrogation was unavailable to Petitioners to seek reimbursement for any part of the proceeds of the loan to Street. *Id.* at 296, 52 A.3d at 146.

We shall reverse the judgment of the Court of Special Appeals. Although we conclude that Petitioners were not *bona fide* purchasers, we hold also that, under a branch of the doctrine of equitable subrogation, Petitioners are entitled to priority for the amount loaned to Street used to pay-off the balance owed on the pre-existing Urban mortgage, amounting to $59,086.72.

## I. ADDITIONAL FACTUAL AND PROCEDURAL BACKGROUND

Urban acquired the Pasadena property on 15 January 2000. She negotiated a loan, secured by that property, from CitiFi-

---

**2.** The Estate had the right to appeal the Circuit Court's interlocutory order denying the Motion to Stay and Dismiss because the motion was made under Rule 14–211 and contemplated injunctive relief as a remedy. *Bates v. Cohn,* 417 Md. 309, 329, 9 A.3d 846, 858 (2010); *See also Washington Suburban Sanitary Comm'n v. C.I. Mitchell & Best Co.,* 303 Md. 544, 580, 495 A.2d 30, 48 (1985) (stating that a stay is an injunction). An interlocutory order of a court may be appealed immediately if the order refused to grant an injunction. Md.Code (1973 Repl.Vol.2013), Cts. & Jud. Proc., Art. § 12–303.

nancial, in the amount of $60,838.36 on 6 December 2004. Urban conveyed the Pasadena property to Street on 30 May 2007. 1st Chesapeake's loan to Street included $59,086.72 to pay-off the then outstanding balance on the CitiFinancial loan.

Urban executed two wills prior to her conveyance of the Pasadena property to Street: one in 2004 and one in 2006, neither of which named Street as a beneficiary.[3] After execution of the 2006 will, Urban's health deteriorated quickly. She was diagnosed with terminal cancer in 2007 and admitted to Hospice of the Chesapeake ("Hospice") soon after. Urban requested that Hospice retain an attorney for her so she could modify her most recent will. Hospice granted her request but, due to the medications Urban was prescribed and taking, she was unable to articulate to the attorney the changes she wanted to effectuate by modification or in a new will. On 27 May 2007, Kathleen Kempler, a Hospice nurse, informed Street that Hospice would no longer retain an attorney for Urban because Urban was unable to communicate how she wanted her will changed. Nevertheless, Street indicated to Hospice that he would continue to make arrangements to transfer the Pasadena property to himself.

On 29 May 2007, Crystal Title Services received a notarized document from Street, authorizing it to prepare a deed transferring the Pasadena property to him. The deed was signed purportedly on 30 May 2007 by Urban and witnessed by Dawn Ridgeway (Urban's daughter), and Margaret Street (Urban's sister). The deed provided for no consideration. Urban died on 5 June 2007, six days after the execution of the deed to Street.

On 3 January 2008, the personal representative of the Urban Estate, Sheila Murphy (also Urban's daughter), filed suit against Street in the Circuit Court for Anne Arundel County. The Estate alleged in its complaint that the deed

---

3. According to the Estate's Complaint in the Circuit Court, at the time of the preparation of the wills, Urban excluded Street as a legatee because she suspected him of having a substance abuse problem and of damaging her house.

from Urban to Street was null and void and asked the court to transfer the Pasadena property to the Estate so that the Estate could effectuate Urban's final wishes with regard to the property, as expressed in Urban's 2006 will—the Pasadena property was to be sold and the proceeds split, with $2,000 of the proceeds to go to Urban's sister, Margaret Street, and the remainder to St. Jude's Children's Hospital. A hearing was held on 15 March 2010 before Judge Michele D. Jaklitsch of the Circuit Court. She found that a confidential relationship existed between Street and Urban at the time of the conveyance of the Pasadena property to Street and that the deed was procured through undue influence exercised by Street on Urban. On 23 March 2010, Judge Jaklitsch ordered that a constructive trust be created and the Pasadena property transferred thereby to the Estate. The hearing judge did not determine expressly, however, whether the deed to Street was void *ab initio*.[4]

As best as we can decipher the record extract here, it appears that, sometime after the Estate filed suit against Street seeking creation of a constructive trust, Street's note and deed of trust (secured by the Pasadena property) was assigned by 1st Chesapeake to Midfirst Bank. The exact date of assignment is undeterminable, but Petitioners' Opposition to the Estate's Motion to Stay and Dismiss argued the Estate should have named Midfirst Bank as a party in its suit against Street because the Estate knew Street had executed a deed of trust as regards the Pasadena property. Hence, we assume, for present purposes, that Midfirst Bank was assigned the note and deed of trust before Judge Jaklitsch created the constructive trust on 23 March 2010.

Street defaulted on the loan and deed of trust in May 2010. Petitioners sent Street on 1 October 2010, via certified mail, a Notice of Intent to Foreclose. On 1 December 2010, Petition-

---

4. A constructive trust is an equitable remedy. Its purpose is to convey property, gained through inequitable means, to the rightful owner of the property. *Bowie v. Ford*, 269 Md. 111, 118, 304 A.2d 803, 809 (1973).

ers filed in the Circuit Court to foreclose, under the deed of trust, on the Pasadena property. The Estate was served with notice of the foreclosure action on 6 December 2010. In response, the Estate filed a Motion to Stay and Dismiss the foreclosure, pursuant to Maryland Rule 14–211.[5, 6]

The Estate alleged in its Motion that Petitioners could not foreclose on the Pasadena property because the Street deed was invalid. The Estate set forth two arguments in support of this proposition. First, it contended that the creation of a constructive trust voids presumptively the Street deed and therefore the deed offers no protection to a subsequent purchaser from Street claiming to be a *bona fide* purchaser. Alternatively, the Estate argued that Petitioners had constructive notice, through *lis pendens*,[7] of the Estate's claim to the Pasadena property and, therefore, were denied protection as *bona fide* purchasers without notice.

---

**5.** Rule 14–211 provides that such a motion be under oath or supported by affidavit and state its factual and legal arguments as to any defenses to the foreclosure. The court is to schedule a hearing on the merits of the motion if: 1) the motion is filed timely; 2) the motion complies substantially with the other requirements of the Rule; and, 3) it states a valid defense to the lien or a valid defense as to why the plaintiff should not be allowed to foreclose. After a hearing, if the lien is found to be invalid or the plaintiff has no right to foreclose, the court will grant the motion, unless the plaintiff presents good cause.

**6.** Judge Jaklitsch stated in a footnote in her opinion that "[t]he Motion to Stay and Dismiss was not filed under oath or supported by an affidavit in accordance with Maryland Rule 14–211," but she did not determine whether these errors provided grounds to dismiss the Motion. *Murphy v. Fishman*, 207 Md.App. at 290 n. 9, 52 A.3d at 143, n. 9. The Court of Specials Appeals noted that, although these deficiencies could justify dismissal of the Motion, it would not reach the issue either because of the trial court's non-resolution. *Id.* Accordingly, we shall follow suit and not consider this issue further. *See* Md. Rule 8–131 (stating appellate courts rarely address issues that are not raised and decided by the trial court).

**7.** Md. Rule 12–102 governs *lis pendens*. In relevant part, the Rule states that *lis pendens* provides constructive notice to perspective purchasers of real property that there is pending litigation regarding the real property. Although not of relevance to the present case, the Rule directs how the geographical scope of *lis pendens* may be extended beyond the county in which the litigation is pending.

On 16 May 2011, a hearing on the Estate's Motion to Stay and Dismiss was held before Judge Philip Caroom of the Circuit Court. As to the Estate's first argument, the court found that Judge Jaklitsch did not declare void *ab initio* the Urban–to–Street deed. As Judge Caroom noted, "Judge Jaklitsch never explicitly stated the conveyance was void *ab initio* or that the lien was invalidated. In fact, even when deeds are set aside on the basis of a mortgagor's fraudulent conduct, foreclosing mortgagees may still be entitled to protection as *bona fide* purchasers." Judge Caroom resolved the Estate's second argument by stating that the Petitioner's notice as to the pending litigation was a "disputed material fact," and, consequently, denied the Estate's Motion to Stay and Dismiss.

The Estate appealed Judge Caroom's denial of the Motion to the Court of Special Appeals. *Murphy,* 207 Md.App. at 269, 52 A.3d at 130. The intermediate appellate court found Petitioners were not *bona fide* purchasers. *Id.* at 297, 52 A.3d at 147. Recognizing that a purchaser is not *bona fide* if he or she had " 'notice of a prior equity before he [or she] acquires the legal title....' " *Id.* at 285–86, 52 A.3d at 140 (quoting *Wash. Mut. Bank v. Homan,* 186 Md.App. 372, 395, 974 A.2d 376, 390 (2009) (internal citations omitted)), the court concluded that, due to the execution of the Street note and deed of trust after the Estate filed suit against Street, Petitioners had constructive notice, through *lis pendens,* of the Estate's claim to the Pasadena property.[8] *Id.* at 298, 52 A.3d at 140.

The intermediate appellate court determined further that no form of equitable subrogation was available to Petitioners. *Id.* at 296, 52 A.3d at 16. The court contrasted the present case with *G.E. Capital Mortgage Services, Inc. v. Levenson,* 338 Md. 227, 657 A.2d 1170 (1995). In explaining its reasoning, the court noted that, in *Levenson,* equitable subrogation ap-

---

8. The Court of Special Appeals did not resolve whether the deed from Urban to Street was void *ab initio*. Rather, it stated that "in cases where a constructive trust was established as a result of finding a confidential relationship, Maryland appellate courts have not held that the deeds in question were void *ab initio* and we do not do so in the instant case." *Murphy,* 207 Md.App. at 293, 52 A.3d at 145.

plied "to refinance lenders who, after a foreclosure sale, obtain a position of priority. . . ." *Murphy*, 207 Md.App. at 296, 52 A.3d at 146. The intermediate appellate court held that equitable subrogation was unavailable to Petitioners because, unlike the refinance lender in *Levenson*, Petitioners sought to invoke the doctrine of equitable subrogation before a foreclosure sale. *Id.* The intermediate appellate court reversed the Circuit Court's judgment and remanded the case to the Circuit Court with directions to grant the Estate's Motion to Stay and Dismiss. *Id.* at 298, 52 A.3d at 148.

We granted the trustees' Petition for a Writ of Certiorari. *Fishman v. Murphy*, 429 Md. 528, 56 A.3d 1241 (2012). Petitioners present four questions,[9] which we combine into two questions for convenience: [10]

1) Whether Petitioners' principal is a *bona fide* purchaser when it had constructive notice through *lis pendens* of another's claim to the land?

2) Whether the doctrine of equitable subrogation provides an alternative and partial remedy to Petitioners even

---

**9.** Petitioners raised the following questions:

1)Whether the doctrine of equitable subrogation is to be broadly and liberally applied or applies only to refinance lenders who, after a foreclosure sale, obtain a position of priority over intervening judgment holders?

2)Whether undisputed facts supporting the application of the doctrine of equitable subrogation establish "good cause" under Maryland Rule 14–211(e) sufficient to prevent the lower court from dismissing a foreclosure action under a pending motion to stay or dismiss where the moving party concedes that the doctrine should apply?

3)Whether a Circuit Court is required to deny a motion to stay or dismiss under Maryland Rule 14–211, where the Circuit Court has found that the motion to stay or dismiss was not filed under oath nor supported by affidavit as required by subsection (a)(3)(A) of the rule and no good cause for the failure to file under oath or affirmation has been provided or alleged?

4)Whether the constructive notice provided by Rule 12–102 pursuant to the doctrine of *lis pendens* defeats all claims against title to real property subject to that constructive notice regardless of the outcome of the pending litigation?

**10.** The Estate did not file a response brief or offer oral arguments before this Court.

though it had constructive notice through *lis pendens* of a possible prior claim to title?

## II. STANDARD OF REVIEW

 When the exercise of a trial court's discretion whether to grant a stay is invoked properly by a facially legally sufficient motion or petition, appellate courts review the ultimate decision whether to grant or deny the stay for abuse of discretion. *Bechamps v. 1190 Augustine Herman, LC,* 202 Md.App. 455, 460, 32 A.3d 542, 545 (2011). We will reverse under this standard if we determine that "no reasonable person would take the view adopted by the [trial] court[ ]." *Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 419, 914 A.2d 113, 121 (2007). We have found abuses of discretion where the trial court ruling was "clearly against the logic and effect of facts and inferences before the court[ ] . . . or when the ruling is violative of fact and logic." *Skevofilax,* 396 Md. at 419, 914 A.2d at 121. Footnote 6 in this opinion notwithstanding, we believe that the present case should be reviewed by this standard. That is not to say that a pure question of law could not be presented, triggering a less deferential standard of appellate review. *See, e.g., Wilson–X v. Dept. of Human Res.,* 403 Md. 667, 675, 944 A.2d 509, 514 (2008) ("[T]rial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature.").

## III. DISCUSSION

 In order to have a first priority lien, a mortgagee or lender must be a *bona fide* purchaser. *See Scotch Bonnett Realty Corp. v. Matthews,* 417 Md. 570, 586, 11 A.3d 801, 810 (2011) (internal citations omitted). A *bona fide* purchaser, or an "innocent purchaser", exists when a party acquires property for valuable consideration, in good faith, and without notice of another's prior claim to the property. *Julian v. Buonassissi,* 414 Md. 641, 684, 997 A.2d 104, 130 (2010); *People's Banking Co. of Smithsburg v. Fid. & Deposit Co. of Mary-*

*land,* 165 Md. 657, 664, 170 A. 544, 547 (1934). When the ordinary requirements for being a *bona fide* purchaser are met—absence of notice of prior claims, good faith purchase, and valuable consideration paid for the property—a lender may be a *bona fide* purchaser of property, "subject generally to the condition subsequent that upon due payment of the mortgage debt . . . [the title is transferred back to the mortgagor]." *Hebron Sav. Bank v. City of Salisbury,* 259 Md. 294, 299, 269 A.2d 597, 599 (1970). Once the court determines a purchaser is *bona fide,* the purchaser may be entitled to protection by receiving priority over previous claims to the land, even if the land's previous deed of trust was rendered voidable due to fraud or undue influence practiced in its creation. *Thomas v. Nadel,* 427 Md. 441, 451–52, 48 A.3d 276, 282 (2012). A purchaser of property is not entitled to the protections of a *bona fide* purchaser, however, if the previous deed was void or if the purchaser had notice of another's claim to the property. *Id.* As we stated in *Matthews,* the distinction between a void deed and a voidable deed is key in determining which protections, if any, are due to a *bona fide* purchaser:

> [A] person otherwise qualifying as a *bona fide* purchaser under the recording act receives no protection under a 'void' deed. On the other hand, a person otherwise qualified as a *bona fide* purchaser for value does receive protection in purchasing from one whose title is merely 'voidable.' Deeds which appear to be valid on their face, but turn out to be void, present insurmountable off-the-record risks for persons relying on the state of record title. It should not be surprising that practically all of the defects discussed in this section present instances of voidable title, not void. The two classic cases of 'void' deeds are those involving lack of delivery and forgery.

417 Md. at 583, 11 A.3d at 808 (quoting 9 *Thompson on Real Property* § 82.12, at 650–51 (2d Thomas ed.1999)). The execution and delivery of a deed gained through "fraud, deceit, or trickery is voidable as between the parties thereto, but not as to a *bona fide* purchaser. A forged deed, on the other hand, is

void *ab initio.*" *Harding v. Ja Laur Corp.,* 20 Md.App. 209, 214, 315 A.2d 132, 135 (1974).

■ In the instant case, Judge Jaklitsch created a constructive trust to convey the Pasadena property to the Estate. Maryland courts have held that creation of a constructive trust offers protections to *bona fide* purchasers of the property, subject to the terms of the trust. *Bowie v. Ford,* 269 Md. 111, 119, 304 A.2d 803, 809 (1973) (creating a constructive trust in a case where the decedent obtained the property through fraud). As we noted in *Bowie,* a trustee for a constructive trust may convey the property to a third party. *Id.* The court will consider, in such instances, the third party entitled to the status of a *bona fide* purchaser, if it purchased the property in good faith and without notice of another's claim to the land. *Id.; see also Cottman v. Cottman,* 56 Md.App. 413, 428, 468 A.2d 131, 139 (1983) (noting that a transferee in a conveyance out of a constructive trustee enjoys the status of a *bona fide* purchaser).

Judge Jaklitsch, in establishing the constructive trust, did not state, however, whether she found the Urban–to–Street deed void or merely voidable. The Estate argues that creation of a constructive trust voids presumptively the Urban–to–Street deed to the Pasadena property, thus offering no *bona fide* purchaser protection to Petitioners, who secured a deed of trust subsequently on the property. Pursuant to *Bowie,* however, because the bare creation of a constructive trust does not preclude necessarily the rights of a subsequent *bona fide* purchaser, whereas a void deed would preclude those rights, we conclude that the bare creation of a constructive trust, without a concurrent declaration that the underlying deed is void, renders the subject deed merely voidable. *See* 269 Md. at 119, 304 A.2d at 809. Hence, Street's bare legal title to the Pasadena property could have been sufficient (other issues aside for the moment) to pass clear title to 1st Chesapeake (and its assignee, Petitioners) because the deed was not declared void *ab initio.* Thus, we agree with the Court of Special Appeals' determination that the mere cre-

ation of a constructive trust in the present case did not void implicitly the deed.

 We turn next to consider whether *lis pendens* provided Petitioners' sufficient notice of the Estate's claim to the Pasadena property, thereby precluding Petitioners from attaining *bona fide* purchaser status. Notice of another's claim to the property may be either actual or constructive. *Lewis v. Rippons,* 282 Md. 155, 162, 383 A.2d 676, 680 (1978).

 The doctrine of *lis pendens* binds a subsequent purchaser of property, who is not party to the relevant litigation affecting the property, to the judgment of the court in the pending litigation. *Greenpoint Mortg. Funding, Inc. v. Schlossberg,* 390 Md. 211, 225, 888 A.2d 297, 305 (2005). As we said in *Schlossberg,* "[a] purchase made of property actually in litigation, pendente lite, for a valuable consideration, and without any express or implied notice in point of fact affects the purchaser in the same manner as if he had such notice; and he will accordingly be by bound by the judgment or decree in the suit. . . ." *Id.*

Another example of this principle is found in *DeShields v. Broadwater,* where Broadwater entered into a contract with Phunlop Sriuthai to purchase an on-going business known as Jack's Liquor Store and the improvements and real property on which it was located. *DeShields v. Broadwater,* 338 Md. 422, 433, 659 A.2d 300, 305 (1995). Sriuthai had purchased the Jack's Liquor Store business from Shirley DeShields on 23 March 1984 and purchased the real property from Charles and Marnette Jackson on 27 April 1985. *Id.* at 429, 659 A.2d at 302. After Broadwater paid a down payment to Sriuthai, but before the note and deed of trust ("Broadwater deed") were executed, DeShields filed suit against Sriuthai seeking to create a constructive trust to convey the improved land to her. *Id.* at 430–31, 659 A.2d at 304. The trial court entered judgment against Sriuthai and caused the property to be conveyed to DeShields. *Id.* Subsequently, Broadwater filed suit against DeShields, arguing that he was a *bona fide* purchaser of the land and, thus, the land should be conveyed

to him by DeShields. *Id.* DeShields retorted that Broadwater was not a *bona fide* purchaser because the Broadwater deed was not executed until after DeShields filed her suit against the prior owners, thus providing Broadwater notice of her claim to the property. *Id.* at 429, 659 A.2d at 303. We held that Broadwater was a *bona fide* purchaser because his contract to purchase the property from Sriuthai was executed before DeShields filed suit against the previous owners of the property. *Id.* at 442, 659 A.2d at 310. We explained that *"lis pendens* proceedings do not technically prevent alienation; they place a cloud on title to the land and 'create a priority in favor of the plaintiff, which, if the plaintiff succeeds on the merits of the complaint ... [preserves] the opportunity to have a lien relating back to the day of the filing of the complaint.' " *Id.* at 436, 659 A.2d at 306 (quoting Janice Gregg Levy, Comment, *Lis Pendens and Procedural Due Process: A Closer Look After Connecticut v. Doehr,* 51 Md. L.Rev. 1054, 1057 (1992)).

Turning to the present case, Urban's Estate filed suit against Street on 3 January 2008, thus providing constructive notice in Anne Arundel County of pending litigation regarding the Urban property. On 18 February 2008, the note and deed of trust from Street to 1st Chesapeake were executed in the amount of $91,350. The note and deed of trust were executed over a month after the Estate filed its litigation claim on the land. *Lis pendens* provides constructive notice that there is pending litigation on the property and that a subsequent purchaser of that real property is bound to the judgment rendered ultimately by the trial court in the pending litigation. *See Schlossberg,* 390 Md. at 225, 888 A.2d at 305. In the present case, had the trial court not created a constructive trust, Street would hold title to the land and the deed of trust executed by Street in favor of 1st Chesapeake would be valid. The trial court found that Street acquired the Pasadena property through undue influence and ordered the property conveyed to the Estate. 1st Chesapeake was obliged to honor the decision of the trial court to convey the Pasadena property to the Estate. In accordance with *DeShields* and *Schlossberg,*

Petitioners are not entitled to the protections of a *bona fide* purchaser because they received due notice (through application of the doctrine of *lis pendens* ) of the Estate's pending litigation regarding the Pasadena property. *Schlossberg*, 390 Md. at 225, 888 A.2d at 305; *DeShields* at 434, 659 A.2d at 306–07. Because the note and deed of trust are in a lower priority position than that of the Estate's claim to the Pasadena property, we hold that the Circuit Court abused its discretion in denying the Estate's Motion to Stay and Dismiss the foreclosure action. Such a motion is to be granted if it "states on its face a defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action." Md. Rule 14–211. The trial court judge denied the Estate's Motion because he determined that it was a disputed material fact whether 1st Chesapeake Home Mortgage had actual notice of the pending litigation initiated by the Estate. He was mistaken that actual notice was required. Constructive notice was sufficient to defeat Petitioners' acquisition of the status of a *bona fide* purchaser. Hence, we agree with the Court of Special Appeals' decision that Petitioners are not *bona fide* purchasers. *Murphy*, 207 Md.App. at 298, 52 A.3d at 147.

Although Petitioners are not afforded the protections of a *bona fide* purchaser, they are entitled nonetheless to some relief under the doctrine of equitable subrogation. Maryland recognizes three types of equitable subrogation: conventional, statutory, and legal. Conventional subrogation applies to agreements "either express or implied, between a debtor and a third party or between a creditor and third party that, upon payment of the debt, the third party will be entitled to all the rights and securities of that debtor or creditor." *Bachmann v. Glazer & Glazer Inc.*, 316 Md. 405, 414, 559 A.2d 365, 369 (1989) (presenting an example of conventional subrogation where there was an agreement between a third party and creditor, that if the third party paid a tenant's rent, the third party would be entitled payment of that rent from the tenant's rent guarantor). Conventional subrogation does not apply here.

Statutory subrogation occurs where a statute provides expressly the right to subrogation in certain situations. *Id. See e.g.,* Md.Code (1975, 2005 Repl.Vol.), Com. Law Art., § 15–401 (setting out the rights of a surety who pays someone else's debt and becomes subrogated as priority creditor); *see also Roberts v. Total Health Care Inc.,* 349 Md. 499, 508, 709 A.2d 142, 146 (1998). In *Roberts,* the State of Maryland contracted with Total Health Care to provide healthcare services to low-income persons and assigned its statutory subrogation rights to Total Health Care. *Id.* at 502–03, 709 A.2d at 143. Maryland Code (1982, 2009 Repl.Vol.), Health–Gen. Art., § 15–120 entitles the State to be subrogated if the recipient of the medical services sues a party for causing the injuries for which they were treated by the State. *Id.* at 502–03, 709 A.2d at 143. In 1987, Total Health Care incurred $59,880 to treat two children who were covered by the Maryland health care program for low income individuals. *Id.* at 507, 709 A.2d at 146. Subsequently, the children's family sued their landlord in tort for the children's injuries and recovered a judgment. *Id.* Upon being denied payment by the children's family of the value of the rendered health care, Total Health Care sued the children's family, arguing that it was entitled to subrogation under Health–Gen. Art., § 15–120. *Id.* at 508, 709 A.2d at 146. The children's family argued that "[section] 15–120 violates principles of procedural due process because the statutory obligation to withhold funds constitutes a lien without the opportunity for a prior hearing." *Id.* We held that Total Health Care was entitled to assert its claims as statutory subrogation. *Id.* at 526, 709 A.2d at 155. Statutory subrogation does not apply to the present case.

 Legal subrogation applies to cases where a third party, to protect its own interests, pays the debt of another. *Bachmann,* 316 Md. at 414, 559 A.2d at 369. A person who acts as a volunteer or intermeddler in paying another's debt is not entitled to subrogation under this category of equitable subrogation; however, when he or she pays the debtor's claim due to mistake or fraud, subrogation is available. *Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 313, 936 A.2d

343, 362 (2007). This form of subrogation may apply even in the absence of an express or implied agreement. *Id.* As we stated in *Hill,* "the object of subrogation is the prevention of injustice. It is designed to promote and to accomplish justice and is the mode which equity adopts to compel the ultimate payment of a debt by one, who, in justice, equity, and good conscience should pay it." 402 Md. at 312, 936 A.2d at 362. Subrogation substitutes one creditor for another, with the substitute creditor having only the rights of the previous creditor. *Id.* Equitable subrogation is appropriate in situations where it is necessary to prevent unjust enrichment, even if the plaintiff has not argued that it is entitled to equitable subrogation. *See Bachmann,* 316 Md. at 410, 559 A.2d at 367.

In *George L. Schnader, Jr. Inc. v. Cole Building Co.,* Cole Building Company ("Cole") entered into an agreement with the Baltimore County government whereby Cole assumed the cost of Baltimore County improving the roads in a residential subdivision to be developed by Cole. 236 Md. at 19, 202 A.2d at 328. Before the roads were finished, Cole sold several undeveloped lots in the subdivision to George Schnader (another builder), assigning to Schnader its duty to pay Baltimore County for improvement of the roads relative to the lots purchased by Schnader. *Id.* at 20, 202 A.2d at 328. Schnader began constructing homes on his lots, asking Baltimore County to finish the road improvements. *Id.* Baltimore County refused to complete contemporaneously the road improvements unless it could complete the roads not only in Schnader's part of the subdivision, but also where Cole retained lots. *Id.* By this point, Schnader had spent $500,000 to improve his lots. *Id.* For his investment to be profitable, Schnader's lots required paved streets. *Id.* To protect his investment in the lots, Schnader guaranteed to Baltimore County payment of the road improvements for the entire subdivision. *Id.* at 20–21, 202 A.2d at 329.

Upon completion of the road improvements by Baltimore County, Schnader paid to the County the amount he owed and the amount Cole owed. *Id.* Schnader sued Cole, alleging he was owed reimbursement from Cole for $8,283.60, the amount

Schnader paid the County to improve the roads serving Cole's lots. *Id.* The trial court found that, absent express agreement between Schnader and Cole requiring Cole to reimburse Schnader, Schnader's claim could not prevail. *Id.* Ultimately, we held that Schnader was entitled, under the legal branch of the doctrine of equitable subrogation, to reimbursement from Cole. *Id.* at 25, 202 A.2d at 331. We determined that, although Schnader's contract with Cole required only that Schnader be responsible for his portion of the road improvements, Schnader's lots would be not be profitable without fully paved roads for ingress and egress from the subdivision streets to the existing public streets. *Id.* Schnader was not a mere volunteer in contracting with the County because he paid Cole's portion of the road improvements to protect his own interests. *Id.*

We have held previously that the elements of legal subrogation are

1) That there is a debt which a party other than the subrogee owes and,

2) That the subrogee paid the debtor's loan to protect his or her rights, not as a volunteer.

*Hill,* 402 Md. at 304, 936 A.2d at 357. How these factors have been applied to varying factual contexts in our relevant case law illuminates their application to the present case.

For example, in *Levenson,* Yolanda Benson executed a deed of trust in favor of Travelers' Mortgage Services as trustee securing a loan in the amount of $131,200. 338 Md. at 234, 657 A.2d at 1173. The underlying note was assigned ultimately to G.E. Capital Mortgage Services ("G.E."). *Id.* Of the original loan amount, $56,283.14 had been applied to retire an existing mortgage on the secured property, held by First Federal. *Id.* Unbeknownst to G.E., prior judgments against Benson had been secured by Levenson at a time when a title search should have revealed them. The judgments against Benson totaled $94,076. *Id.* at 233, 657 A.2d at 1173. The lender's title search did not disclose these judgments. *Id.* at 234, 657 A.2d at 1173. G.E. became aware of the judgments only after

Benson defaulted on the note payments to G.E. G.E. initiated foreclosure proceedings on the property. *Id.*

G.E. was the successful bidder at the foreclosure auction sale with a bid of $45,000. *Id.* at 235, 657 A.2d 1170, 1173. After the sale was ratified, Levenson filed a petition in the relevant circuit court seeking a determination that his judgment liens had priority over the G.E. lien because of the G.E. lien's later-in-time recording. *Id.*, 657 A.2d at 1174. Conversely, G.E. argued that Levenson's liens were extinguished because "G.E. Capital stood in the shoes of First Federal,[the previous mortgagee] and enjoyed a first priority to the maximum of $56,283,14...." *Id.* The trial court determined that G.E. stood in the shoes of First Federal and that the foreclosure extinguished Levenson's liens. *Id.* at 236, 657 A.2d at 1174. We affirmed the circuit court, determining that G.E. intended to have the priority lien because ordinarily G.E. would not have expended $56,283.14 of the loan proceeds to pay off the previous mortgage. *Id.* at 242, 657 A.2d at 1177. Furthermore, we noted that G.E.'s decision left Levenson in no worse position than if G.E. had not retired the previous mortgage. *Id.* at 251, 657 A.2d at 1181.

In *Milholland v. Tiffany,* a husband conveyed property, encumbered by a mortgage, to his wife. 64 Md. 455, 456, 2 A. 831, 832 (1886). Thereafter, appellee, Tiffany, the husband's friend, paid-off the mortgage on that property. *Id.* Shortly thereafter, the husband sought bankruptcy protection. His creditors sought to have undone the conveyance from husband to wife. *Id.* The circuit court concluded that the conveyance from husband to wife was voidable because it was accomplished to defraud the husband's creditors. *Id.*

Tiffany sued, arguing that he was a *bona fide* purchaser and was owed the amount of the mortgage he paid-off. *Id.* We held that Tiffany was not a *bona fide* purchaser because he had constructive notice that the conveyance between husband and wife was fraudulent: "[I]t seems to us that common justice to the creditors requires that such conveyances in themselves be sufficient to put a purchaser from the wife upon

inquiry." *Id.,* 2 A. at 833. We determined also that the mortgage was invalid due to a procedural defect in an oath required to create a valid mortgage. *Id.* Even though we concluded that Tiffany was not entitled to the protections afforded a *bona bide* purchaser, relief was afforded Tiffany under the doctrine of equitable subrogation:

> [A]lthough the appellee is not a bona fide purchaser without notice, we see no reason why he should not be substituted to the rights of the purchaser mortgage[e]. The law of substitution is not founded on contract or agreement, but upon the equitable powers of the Court. It is in the nature of equitable relief to protect a meritorious creditor who has paid the debt of another against loss and damage.

*Id.* at 456, 2 A. at 834.

Here, Petitioners' predecessors in the chain were not volunteers or intermeddlers because they expended money to retire the existing loan in order to protect their interests. The principal, believing (mistakenly) that Street held a valid deed to the Pasadena property, expended $59,086.72 to pay-off the existing loan placed by Urban. Midfirst, as assignee of the note underlying the Street deed of trust, acquired an interest in the Pasadena property and became a lien holder as to that property. If a debtor's property is foreclosed upon, the status of a priority lien holder entitles a mortgagee or trustee to be first in line for payment from the proceeds of a foreclosure. Although Petitioners had constructive notice of another's claim on the land, constructive notice alone does not defeat the application of equitable subrogation. As we stated in *Levenson,* equitable subrogation applies in the "absence of actual knowledge on the part of the subrogation claimant concerning the intervening lien." 338 Md. at 243, 657 A.2d at 1178.

Similar to *Milholland,* even though Petitioners had *lis pendens* constructive notice of the Estate's claim and perhaps should have investigated the land records more thoroughly before closing on the loan to Street, this failure does not defeat the application of equitable subrogation. *See Milholland,* 64 Md. at 455, 2 A. at 835 ("Where money has been

loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer who he has thus satisfied. . . .")

Had Petitioners not retired the existing Urban loan, the Estate would have been required to pay-off that loan encumbering the Pasadena property. Petitioners made a mistake that did not affect or burden the Estate; rather, Petitioners' mistake benefitted the Estate significantly. As we noted in *Levenson,* equitable subrogation is applicable in situations where the subrogee's failure to consult the land records benefitted a third party:

It is clear that appellee's failure to consult the Land Records in no way affected the appellant. It certainly did him no harm. If his contention is sustained in this case it will do him a great deal of good, and this, too, because of a mistake made by appellee in not consulting the Land Records. His position is: You made a mistake, it did me no harm; in fact, resulted in greatly benefitting me. Therefore, you can not have your mistake corrected. This position has no appeal to a court of equity. Negligence, therefore, if any there was, committed by appellee, caused no harm to the appellant and it is immaterial.

*Levenson,* 338 Md. at 241–42, 657 A.2d at 1170 (quoting *Bennett v. Westfall,* 186 Md. 148, 154–55, 46 A.2d 358, 361 (1946)).

We conclude that, pursuant to *Levenson* and *Milholland,* applying equitable subrogation to the particular circumstances of this case prevents the unjust enrichment of the Estate. Accordingly, we reverse the judgment of the Court of Special Appeals. Equitable subrogation has been applied broadly to deeds of trust and mortgages, both before and after foreclosure sales. The purpose of equitable subrogation is to prevent inequitable consequences. The Court of Special Appeals' decision to deny to Petitioners the remedy of equitable subrogation perpetuated an inequity. The Estate would be enriched unjustly otherwise because of Petitioners' mistake—a mistake

which caused no harm to the Estate. Hence, we hold that Petitioners are subrogated to the extent of $59,086.72.

JUDGMENT OF THE COURT OF SPECIALS APPEALS REVERSED; CASE REMANDED TO THAT COURT TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND REMAND TO THE CIRCUIT COURT WITH DIRECTION TO ENTER JUDGMENT IN FAVOR OF THE TRUSTEES CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE ESTATE OF DOROTHY MAE URBAN.